GERSONDE EQUIPMENT COMPANY *v.* WALTERS.

1. PRINCIPAL AND SURETY—REIMBURSEMENT.
    One of the rights which a surety has against the principal is the right of reimbursement.

2. BILLS AND NOTES—PAYMENT BY PARTY SECONDARILY LIABLE.
    A negotiable promissory note that is paid by a party secondarily liable thereon is not discharged but the party so paying it is remitted to his former right as regards all prior parties (CL 1948, § 439.123).

3. SAME—INDORSEMENT—REACQUISITION BY INDORSER-PAYEE.
    A payee-indorser of a negotiable promissory note who reacquires the note from the indorsee and thereby terminates its rights it may have created by the indorsement is again in its original position as far as rights under the contract with the maker (CL 1948, § 439.123).

4. AUTOMOBILES — RETAIL INSTALMENT SALE — REPOSSESSION — DE-
    FICIENCY.
    Repossession of motor vehicle under a conditional sale contract which did not expressly provide for personal liability for any deficiency judgment after repossession precluded payee of note, upon repossession after reacquisition of note from indorsee bank, from recovering from the maker the amounts payee had theretofore made to the indorsee bank (CL 1948, §§ 566.301, 566.308).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Suretyship § 221.
[2] 8 Am Jur, Bills and Notes §§ 450, 826.
[3] 8 Am Jur, Bills and Notes § 451.
[4] 47 Am Jur, Sales § 866.
    Rights and remedies as between parties to conditional sale after seller has repossessed himself of the property.  99 ALR 1288.
[5] 8 Am Jur, Bills and Notes § 830.
[6, 7] 8 Am Jur, Bills and Notes §§ 449, 537.
[8] 14 Am Jur, Costs § 92.

5. SAME — RETAIL INSTALMENT SALE — INDORSEMENT TO BANK — PAYEE'S REMEDIES — AUTHORIZATION TO PAYEE TO MAKE PAYMENTS.

Authorization by maker of promissory note to payee to make payments to indorsee bank will not be implied, where maker had given no such authority, hence payee who had made such payments upon a statutory retail instalment contract of motor vehicle to bank prior to reacquisition of the contract and negotiable note upon which it had unconditionally guaranteed payment was limited to either of alternative remedies of suit to collect payments or repossession (CL 1948, §§ 566.301, 566-.308).

6. BILLS AND NOTES—PRINCIPAL AND SURETY.

The negotiable instruments law which does not itself use the term "surety", is construed as embracing the surety within the definition of a person whose liability on an instrument is primary, thus superseding the law of suretyship as applied to commercial paper.

7. SAME—INDORSEMENT—PRINCIPAL AND SURETY.

The liability of an indorser of a negotiable promissory note, characterized as a conditional and secondary obligation to pay is to be distinguished from that of a surety who is absolutely liable to pay if the maker or principal does not.

8. COSTS—APPEAL—APPENDIX—BRIEF.

No costs on appeal are allowed appellee upon affirmance of order dismissing action against him, where he failed to file any appendix or brief.

SMITH and SOURIS, JJ., dissenting.

Appeal from Berrien; Robinson (Thomas N.), J. Submitted October 11, 1960. (Docket No. 57, Calendar No. 48,463.) Decided April 26, 1961.

Assumpsit by Gersonde Equipment Company, a Michigan corporation, against George Walters for sums due on conditional sales note after repossession of motor vehicle. Count in declaration, claiming judgment for sums paid by plaintiff as indorser to keep note current, dismissed on motion. Plaintiff appeals. Affirmed.

*Ryan & McQuillan* (*James B. McQuillan,* of counsel), for plaintiff.

Kavanagh, J.   On January 21, 1958, defendant George Walters purchased a motor truck from plaintiff Gersonde Equipment Company.   Defendant executed and delivered to plaintiff a conditional sales note in the amount of $8,926.   The terms of the note provided that title to the motor truck would remain in the seller until the purchaser performed a condition, namely, payment of the above sum in 24 monthly instalments of $371.95 each, with the first instalment due March 1, 1958.   The note provided in the event of default as follows:

"I (Walters) further agree that if I make default in the payment of any one of said instalments, or in paying said taxes, or use said property for any illegal purpose, or if said property is levied upon, or if I attempt to sell or remove the same, or if at any time the payee shall deem itself insecure, then it may in either or any such event either (1) declare the entire sum remaining unpaid hereunder to be immediately due and payable, and elect to sue for the amount due, thereby vesting the absolute title to said property in me, or (2) take possession of said property wherever found and thereafter hold it absolutely free from all claims by me, and retain all payments made by me hereunder as and for reasonable rental for the use of said property, diminution in salable value thereof and liquidated damages."

Defendant took possession of the motor truck on the date of sale.

Plaintiff discounted the note to the Benton Harbor State Bank.   The indorsement to the bank was as follows:

"Pay to the order of Benton Harbor State Bank. For value received I hereby indorse the within note unconditionally and guarantee the payment of the

same and of all instalments, renewals and extensions thereof and hereby assign and transfer to the owner or holder thereof all interest in the property thereon described."

Subsequently defendant defaulted in his monthly payments. Under the terms of the indorsement plaintiff made 4 monthly payments to the bank on behalf of defendant. The 4 payments of $371.95 each totaled $1,487.80. Defendant reimbursed plaintiff to the extent of $615, leaving a balance of $872.80. On or about June 21, 1958, plaintiff, because of defendant's continuing default in the monthly payments, repurchased the note from Benton Harbor State Bank. It then repossessed the motor truck on or about June 30, 1958, and sold the truck at public sale, sustaining a loss.

Plaintiff filed a declaration in the circuit court for Berrien county containing 3 counts. The first and third counts have nothing to do with the appeal before this Court, and have been otherwise disposed of. Under count 2 of the declaration plaintiff seeks reimbursement for the balance of the 4 monthly payments which it made to the bank as indorser of the note on behalf of defendant. Defendant moved to dismiss count 2 of the declaration for the reason the defendant's obligation to pay was, as a matter of law, canceled by the plaintiff's repossession of the motor vehicle. The trial court granted the motion to dismiss and plaintiff appeals. It contends that where a conditional vendor negotiates a conditional sale note to a third party, becoming secondarily liable for the payments, and then makes payments on the note for the conditional vendee in default, the conditional vendor has a legal right to bring an action of assumpsit against the conditional vendee for reimbursement of the payments so made even after repossession of the subject matter of the conditional sale.

Plaintiff-appellant admits that by indorsing and guaranteeing payment of the note to the bank, it became secondarily liable on the note. Plaintiff also asserts the indorsement of the note to the bank, with the accompanying guarantee of payment, changed the legal relationship between the maker and the payee. It is plaintiff's position that the indorser became a surety. One of the rights which a surety has against the principal is the right of reimbursement. Plaintiff, however, admits the instrument in question is a negotiable instrument. The payment of the monthly payments by plaintiff was the performance of the legal obligation created by it by indorsement to the bank. When it repurchased the note from the bank, it paid a lesser sum to the extent of the monthly payments which it had paid on behalf of defendant. Unquestionably plaintiff's motive in making the monthly payments for defendant was to assist defendant so that he would keep the motor truck and complete payment of the note. To this extent it was beneficial to both plaintiff and defendant.

CL 1948, § 439.123 (Stat Ann 1959 Rev § 19.163), provides in part as follows:

"Where the instrument is paid by a party secondarily liable thereon it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties."

The following similar statement, followed by numerous citations, is found in 11 ALR 449, 453:

"If the original creditor takes up the paper thus transferred, he is remitted to his original rights, and may bring his action upon the paper or upon the original consideration, at his election."

This means plaintiff thereby terminated any rights it may have created by its agreement with the bank and is again in its original position as far as rights under the contract with the maker.

Plaintiff contends it has dual rights because of the different capacities in which it was connected with the note. It alleges that by electing to repossess the truck it exercised one of the remedies available to it as holder of the note according to the terms of the note. It argues the present suit was brought to enforce plaintiff's other right, namely, its right of reimbursement which was acquired as a surety on the note. No such dual rights exist. One contract was entered into—a statutory retail instalment sale contract covering a motor vehicle,[1] a part of which was a provision how the payments were to be made. When the contract was entered into, the maker did so with an understanding that in the event he defaulted he could be sued for the unpaid balance or have the property repossessed in accordance with the terms of the contract. Plaintiff also entered into the contract with the same understanding. No authorization was given by the maker requesting the plaintiff to make the payments to the bank, and none can be implied. Plaintiff made them to protect itself. It is limited by its contract to the alternative remedies of suit for payment or repossession of the property.[2]

[1] PA 1939, No 305, § 1 (CL 1948, § 566.301 [Stat Ann 1959 Rev § 19.415(1)]), provides in part as follows:

"Sec. 1. * * * (a) The term 'retail instalment sale' means and includes every retail contract to sell a motor vehicle and every retail sale of a motor vehicle to any person (1) in which the cash price of the motor vehicle may be paid in instalments over a period of time, and (2) in which the seller has taken or retained a security interest in the motor vehicle thereby contracted to be sold. * * *

"(g) The term 'retail instalment contract' means any written instrument which is executed in connection with any retail instalment sale and includes conditional sales contracts, purchase-money chattel mortgages and bailment leases retaining a security interest in the seller."

[2] PA 1939, No 305, § 8 (CL 1948, § 566.308 [Stat Ann 1959 Rev § 19.415(8)]), provides as follows:

"Sec. 8. If the proceeds of the resale are not sufficient to defray the expenses thereof and also the expenses of retaking, keeping and storing the motor vehicle and the balance owing under the contract, after crediting the same with that portion of the finance charge above provided, the seller may recover the deficiency from the buyer or from anyone who has succeeded to or assumed the liability of the buyer: *Provided, That such instalment sale contract expressly provides for personal liability for such deficiency.*" (Emphasis supplied.)

It is likewise limited by statute, *since the contract did not expressly provide for personal liability for any deficiency judgment after repossession.*

If the payee were allowed to compel the maker to reimburse the payee for the defaulted payments, the breach which justified the taking of his property would be cured.    This is the reason behind the alternate remedies.    If the payee decides to sue for the payments, title passes to the purchaser and, having title and possession of the automobile, he is required to pay the sums owing under his contract.    Plaintiff chose to repossess, and the trial court properly found that having made its election, plaintiff could not sue for the payments made to the bank.

An argument is made that plaintiff is a surety and that the law of suretyship, with its accompanying rules of reimbursement and restitution, should be applied to the instant case.

50 Am Jur, Suretyship, § 6, pp 906, 907, deals with suretyship as applicable to negotiable instruments, and reads in part as follows:

"The law of negotiable instruments, considered in a separate article, has been at least partially codified in the uniform negotiable instruments act, which is universally in force throughout the United States and is controlling in all matters comprehended by its terms.    However, nowhere in the uniform negotiable instruments act is the term 'surety' mentioned.    It is declared that the person 'primarily' liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same.    All other parties are 'secondarily' liable.    A surety is held to come squarely within the definition of a person whose liability is primary.    This omission of the term 'surety' from the law has led to some conflict in the holdings of the courts in respect of its effect on the law of suretyship as applied to commercial paper.    The majority of the courts hold that the uniform act supersedes the law as it stood prior

thereto, and that the law of suretyship no longer applies to negotiable instruments."

This statement is supported by numerous authorities from a number of States.

In 50 Am Jur, Suretyship, § 9, p 909, the rights and duties of an indorser and surety are distinguished as follows:

"The rights and duties of an indorser correspond in some respects to those of a surety. He has in some instances been referred to as a surety, and has been regarded as such where his indorsement was irregular or anomalous. He may, of course, by the terms of his contract expressly assume the liability of a surety. The contract of an indorser, however, differs in some important respects from that of a surety.

"As elsewhere stated, an indorser agrees to pay upon certain conditions. Unlike a surety, who is absolutely liable to pay if the principal does not, the indorser is only conditionally and secondarily liable, the extent of the conditional contract of indorsement being to pay on demand made on the maker, and notice of dishonor given to the indorser in case payment is not made by the maker. Hence, without due demand and notice at the maturity of a note, an indorser will be discharged, while a surety continues liable on his contract, although in some jurisdictions, by statute, notice to a surety 'the same as to an indorser' is required. Also, in some cases it has been held that a surety may spur the creditor into activity by notice to pursue the principal debtor, on pain, for neglect, that the surety will be no longer bound; but an indorser cannot call on the holder of a protested note to sue the drawer, and if he refuses, thereby relieve himself, for if he wishes instant recourse to the principal, it is his duty to pay the note and sue for himself."

The order of the trial court granting the motion to dismiss is affirmed. Defendant not having filed any appendix or brief, no costs are allowed in this Court.

DETHMERS, C. J., and CARR, KELLY, BLACK, and EDWARDS, JJ., concurred with KAVANAGH, J.

SMITH, J. (*dissenting*).  Many years ago[1] the common-law judges enunciated a "rule" of law, respecting title-retaining contracts, to this effect:  If the vendee failed to pay, the property might be reclaimed by the vendor, since, having title, he was merely reclaiming his own.  On the other hand, the vendee had made him a promise to pay.  Alternatively, then, the vendor might turn to that.  But, ran the "rule," he could not have both remedies.  If he retook the chattel he canceled the debt for the contract price, or if he sued on the debt he passed title.[2]  The 2 remedies were thought to be inconsistent.  It will be observed that the term "passing" title is merely the law's way of saying that a contra result would be inequitable. Whatever had passed between the parties had passed long before.

Side by side with the above rule, and not inconsistent with it, grew another.  It arose, as did the first, out of what were conceived to be considerations of elementary justice and fairness.  It said that when one man had to pay a debt rightfully owed by another, he might have reimbursement, often called "restitution," from that other.

In my discussion of this case, which I take to be of sufficient importance in a credit economy to warrant more than a *pro forma* treatment, we must make certain constructions of the pleadings, since the case was dismissed below without trial.  As set up in the declaration the situation was a familiar one.  A man (the defendant here) bought a truck.  The purchase was "on time," as the saying goes.  He, as maker, signed a conditional sale note for the balance due on

---

[1] See 3 Jones, Chattel Mortgages and Conditional Sales (Bowers ed), ch 31, p 379 *et seq.*
[2] *Burroughs Adding Machine Co.* v. *Wieselberg*, 230 Mich 15.

the cost after the down payment. His dealer, the payee (plaintiff here), indorsed the note, with recourse (guaranteeing the payment of the same and of all instalments), and discounted it to a bank. Some time later the maker defaulted on certain instalments and the indorser, he pleads, "was required" to pay them to the bank. Still later the dealer repossessed the truck (the bank having re-negotiated the note back to the dealer without recourse) and sold it. There resulted a loss to the dealer. But he is not suing for this loss. He is suing on another obligation.

The declaration was in 3 counts. The first does not concern us. The second, based upon the indorsement, is framed upon a suretyship theory, and is for the instalments paid. The third is for the loss, above-mentioned, arising on the sale. That is not now before us, the dealer apparently acquiescing in the dismissal of such count.

This appeal concerns count 2, relating to the instalments paid. As to these the declaration asserts that the maker went into default on the instalments and that the plaintiff, as indorser, was required to pay them. The maker, on the other hand, denies in his answer that he was in default and says that he has no knowledge of what the indorser was required to do. The trial judge cut this Gordian knot summarily at pretrial. The colloquies are not before us, but he ordered both counts dismissed upon the theory that "defendant's obligation to pay the amount remaining unpaid thereon was canceled by the plaintiff's repossession of the motor vehicle." The substance of what he has said is that, as a matter of law, the sum pleaded under count 2, even if paid as alleged, was canceled by the repossession. Was it? That is the issue before us. I will take the case as it now stands, assuming neither fraud upon the bank through the use of fictitious paper, nor a gift (of

the instalments paid) by the dealer to the buyer. Neither is pleaded and the gift theory is belied by the buyer's return to the dealer of a portion of the instalments paid, this action being for the balance.[3]

First, it is urged that we affirm upon the theory that the following quotation from 11 ALR 449, 453 controls the situation presented:

"If the original creditor takes up the paper thus transferred, he is remitted to his original rights, and may bring his action upon the paper or upon the original consideration, at his election."

This text offers no support whatever for the position here taken that the party primarily liable need not reimburse his guarantor, should the latter be required to make payment. It refers to an entirely different fact situation, not presented to us, namely, a re-acquirer's election to sue on the note or on the contract.

The obligation here sought to be enforced arises in this way: The sale of the note to the bank vested in the bank 2 separate promises, (a) that of the defendant expressed in the note and (b) that of the plaintiff as indorser, upon which promise the bank could sue if the necessary steps were taken. When an indorser makes payment (after default by the maker) it is in exoneration of this promise to the bank. The liability, and the payment, to the bank flow from the promise made by the indorser to the bank. No "authorization" by the maker to the indorser to so pay is involved. Indeed, it may be

---

[3] The dealer states in its brief (the buyer did not appear in our Court) that "Under the terms of the indorsement, plaintiff made 4 monthly payments to the bank on behalf of defendant. The four payments of $371.95 each totalled $1,487.80. Defendant reimbursed plaintiff the extent of $615, leaving a balance of $872.80 for which sum plaintiff seeks judgment in this action."

regarded as immaterial.[4]   Here the plaintiff pleads the indorser's usual case.  He was required to pay after the maker's default.  But in making such payments the plaintiff was doing what the maker was primarily liable to do.  The payments were made by plaintiff, not as a principal debtor but as one secondarily liable.

Immediately upon making such payment an obligation arose on the part of the defendant to reimburse the plaintiff.  How it has been lost, or by doing what, I cannot see.  We have an independent obligation.  It is not contained in the terms of the conditional sale instrument but arises from the promise to repay made by Walters, the defendant, to Gersonde, the plaintiff, when Gersonde paid Walters' debt to the bank.  What is involved, actually, is no more than a claim for restitution, and it will be imposed by law, if need be, to prevent unjust enrichment.  It is no more than elementary fairness to require an automobile owner to reimburse those whose money has paid his bills, either to keep his car in operating condition (gasoline, oil, and upkeep) or in his possession (instalment payments made on his obligation).  All of this has nothing to do with the "passage of title" to the car if and when the holder of the paper upon abandonment of the obligation, must make an election as to his remedy.

Nor is it any answer to say that the indorser should not have restitution from the maker for instalments paid since such instalments reduced the indorser's liability to the bank.  So they did.  But

---

[4] "A surety who contracts with a creditor without the consent of the principal is not a volunteer.  The creditor is entitled to obtain the additional security afforded by a surety.  The payment by the surety in satisfaction of his own obligation, which has the effect of discharging the principal, is an unjust enrichment of the principal.  He must, therefore, reimburse the surety to the extent of the enrichment."  Restatement, Security, § 104, comment *h*.  See, also, Restatement, Restitution, § 76, *infra.*

the indorser's liability to the bank arose only because of default by the maker. It would be odd, indeed, if the very act of the maker that forced the indorser to pay should also wipe out the maker's liability therefor to the indorser, on the ground that the indorser had thereby merely discharged his own liability (thus wrongfully created by the maker) to the bank.

Finally, it may be urged that the indorser's payments on the note were really car payments and, hence, that liability for these car payments, like that for any other car payments, is wiped out by repossession. The difficulty with this theory is that when a party secondarily liable upon a note is called upon to make good upon default of the maker, he, the party secondarily liable, is not "purchasing" whatever the maker spent the money for. Thus, the secondary party is not purchasing jewels, a trip to Europe, or land if, in fact, land is what the maker spent the money for. He has no interest in land, he is not liable to taxation as an owner of land, nor is he entitled to vote upon certain local issues as such owner. He has merely discharged his obligation to the holder and he may look for reimbursement to the maker. It is equally true that when the indorser here made good on his guaranty these were not "car payments" and he is entitled to the same restitution as any other indorser who has been called upon to make good upon the maker's default.

I share the feeling of the law student, that the more all these objections are examined the more I don't understand them. The dealer's money permitted this car to go on the road in the buyer's possession. For this he is owed a debt. It may be only fair to say that if he retakes the car (as he did) he can no longer sue on the debt, save to the degree permitted by statutory change (if any there be) of the common law. But the dealer did more than put

the car in the buyer's possession. By making good on his own indorser's liability to the bank, he permitted the car to remain in the service of the buyer. The exoneration of the principal obligor's debt by the surety created in the principal an independent obligation. In such a situation it has been well said that the obligation creates and defines the contract, not, as normally, the contract the obligation. The obligation is, as we noted, independent, neither contemplated as a part of the conditional sales transaction, nor comprehended within its terms.

There can be no serious question but that an independent obligation, not within the terms of the conditional sale, is not involved in any "election" of remedies, and hence is not canceled by repossession of the car by the dealer. An example, in addition to the one before us, is the promissory note sometimes given to the dealer for the down payment. It is a separate and independent obligation. The conditional sale agreement merely furnishes the context within which it is found, but of which it is not a part. In this situation the weight of authority and of reason is clear that repossession of the car does not cancel the obligation. The repossession rule does not apply because the reasons for the rule are not present. As a court put it in a recent case where, as here, it was urged that repossession had wiped out the obligation:[5]

"The weight of authority is that where title is not retained as security for a note given as a down payment the note is a distinct obligation, and where it is a distinct obligation repossession of the article and enforcement of the note are not inconsistent remedies. * * * ·

"The note was a separate and distinct obligation, and the trial court properly allowed recovery on the note."·

---

[5] *Anderson* v. *Hiatt,* 181 Cal App 2d 9, 11 (4 Cal Rptr 858).

Nothing has been cited to us, nor does our independent research disclose anything in our statutory[6] or case law warranting the conclusion that this dealer who has made good on his indorsement and, thereby, has permitted the purchaser to keep possession of the truck for a period during which it otherwise would be subject to repossession, need not be reimbursed by the maker of the note. Moreover, such conclusion is completely inconsistent with established doctrines of suretyship (an indorser is a surety)[7] and restitution.[8]

---

[6] So far as the statutory situation is concerned, we have 2 statutes relating to the instalment sales of motor vehicles, PA 1939, No 305 (CL 1948, § 566.301 et seq., Stat Ann 1959 Rev § 19.415 [1] et seq.), and PA 1950 (Ex Sess), No 27 (CL 1948, § 492.101 et seq., Stat Ann 1957 Rev § 23.628 [1] et seq.). The degree to which the first is inconsistent with the second, and hence repealed by implication, we have never in the context before us passed upon, nor is the question argued on appeal, nor is it necessary or helpful to decision. We thus, as did appellant, and the trial court in its pretrial conference memorandum, and later order, refrain from any interpretation of or reliance upon either statute. The assumption that statutory provisions reinstalment sales are pertinent to our problem necessarily involves the assumption that the obligation asserted by appellant is within the conditional sale contract. It is the essence of appellant's position that the obligation is not so included.

[7] See Restatement, Security, § 82, comment k. As to the rights of a surety who "makes a payment or otherwise performs on default by the principal" see the black letter statement of § 104, which follows:

"REIMBURSEMENT BY PRINCIPAL: IN GENERAL.

"(1) Where the surety makes a payment or otherwise performs on default by the principal, or where the surety's property is used to satisfy the principal's duty, it is the duty of the principal to reimburse the surety to the extent of his reasonable outlay if

"(a) the surety's obligation has been incurred, or his property has been subjected to a charge, with the consent of the principal, or

"(b) the principal has assumed an obligation which was once the primary obligation of the surety.

"(2) Where a surety who has undertaken his obligation without the consent of the principal makes a payment or otherwise performs on account of the principal, it is the duty of the principal to reimburse the surety to the extent that the principal has been unjustly enriched."

[8] Restatement, Restitution, § 76:

"A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

The case would not be different in principle if Walters had borrowed the money from Gersonde for the very purpose of making the payments, or if there had been an express contract between Walters and Gersonde that Gersonde would make the payments and Walters would repay him. Surely we are not, at this late date, going to abandon the principle of *Slade's Case*,[9] or repudiate Lord Mansfield's holding in *Moses* v. *Macferlan*,[10] upon which so much of today's law rests.

In short, repossession of the truck by the seller did not operate with the same effect as a discharge in bankruptcy for the buyer.

The judgment should be reversed and the cause remanded for further proceedings not inconsistent herewith. Costs to appellant.

SOURIS, J., concurred with SMITH, J.

---

[9] 4 Co Rep 92b (76 Eng Rep 1074).
[10] 2 Burr 1005 (97 Eng Rep 676).