McBRIDE v ARENDS

1. VENDOR AND PURCHASER—LAND CONTRACTS—FORFEITURE—COM-
    MON LAW—STATUTES.

    The common-law rule that a vendor after declaring a forfeiture of
    a land contract may not subsequently resort to remedies which
    affirm the contract and seek to recover under it was not
    expressly abrogated by a statute which provides for summary
    proceedings to recover possession of premises after default in
    payments on a land contract (MCLA 600.5750; MSA 27A.5750).

2. VENDOR AND PURCHASER—LAND CONTRACTS—FORFEITURE—SUBSE-
    QUENT ACTION—SEPARATE AGREEMENTS—INTENT OF PARTIES.

    Summary proceedings by a land contract vendor against a de-
    faulting vendee which resulted in the forfeiture of the land
    contract did not bar a subsequent action by the vendor on a bill
    of sale, promissory note and security agreement, where the
    documents evidence an intent between the parties to enter into
    two separate agreements, one in regard to the sale of the realty
    and the other in regard to the personalty, even though the land
    contract and the security agreement are tied together by mu-
    tual default clauses and arise from the same transaction.

Appeal from Isabella, Robert H. Campbell, J.
Submitted October 6, 1977, at Lansing. (Docket
No. 29422.) Decided November 8, 1977. Leave to
appeal denied, 402 Mich 890.

Complaint by Elton L. McBride against William
R. Arends for an order compelling defendant to
reassign to the plaintiff various licenses which had
been assigned to defendant as part of a sale of a
business. Complaint dismissed. Plaintiff appeals by
leave granted. Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 77 Am Jur 2d, Vendor and Purchaser §§ 591, 592.
[2] 77 Am Jur 2d, Vendor and Purchaser § 580 *et seq.*

*Dunnings & Canady, P. C.,* for plaintiff.

*William R. Thompson* and *William R. Rush,* for defendant.

Before: D. C. Riley, P. J., and J. H. Gillis and R. M. Maher, JJ.

J. H. Gillis, J. Plaintiff brings this delayed appeal from an order entered on May 12, 1976, by the Circuit Court of Isabella County finding no cause of action on his complaint.

Plaintiff sold defendant a business known as the Avalon Bar located in Mt. Pleasant in October of 1968. The building which housed the bar and the land upon which it was situated were sold pursuant to a land contract. The business entity, inventory and liquor license were transferred under a bill of sale accompanied by a note and security agreement.

Defendant fell in arrears in his payments on the land contract and plaintiff recovered possession of the property through district court summary proceedings in July of 1975.

Plaintiff then requested the defendant to reassign the liquor license that was sold with the business in accordance with the security agreement executed between the parties. Defendant refused to do so. Accordingly, plaintiff commenced an equitable action in circuit court to compel the defendant to reassign the liquor license to him. Defendant answered the action by claiming that the land contract and the bill of sale along with the security agreement were one transaction, and an action on one was an action on both. Therefore plaintiff had made an election of remedies by declaring the contract forfeited in the district

court proceedings, and was precluded from bringing any further actions on the forfeited contract.

In support of his contention, defendant relies on MCLA 600.5750; MSA 27A.5750 and *Gruskin v Fisher,* 70 Mich App 117; 245 NW2d 427 (1976), which held that MCLA 600.5750 contains no clear and expressed legislative intention to abrogate the common-law rule that a vendor after declaring a *forfeiture of a land contract may not subsequently resort to remedies which affirm the contract and seek to recover under it.*

The circuit court adopted defendant's position and ordered the plaintiff's complaint dismissed.

Plaintiff appeals this order contending there were two contracts involved: 1) a land contract for the sale of the real property, and 2) a bill of sale accompanied by a note and a security agreement for the sale of the business, inventory and liquor license. Hence, an action on the later contract would not be barred by earlier action on the former contract.

In order to decide the question presented, we must determine how many contracts evolved from the sale.

A review of the record reveals that the following agreements were presented into evidence:

1) A preliminary sales agreement describing the terms of the sale,

2) A land contract calling for the sale of the property and the building attached thereto,

3) A bill of sale for the personal property subject to a security agreement,

4) A security agreement which covers the personal property listed in (3), which also contains the following provision:

"AS A FURTHER CONSIDERATION for the Bill of

Sale the debtors agree that in the event of default of the conditions of the payment herein or in the Land Contract executed by the parties simultaneously herewith, they will re-assign to the sellers all interest in the SDM and Tavern licenses, or any extensions or renewals thereof with the approval of the Michigan Liquor Control Commission."

These agreements are tied together by mutual default clauses[1] and by the fact that they do arise from the same transaction. These facts do not establish that only one contract was contemplated and executed by the parties. On their face, the documents presented are separate and distinct contracts, one for the sale of real property, and one for the sale of personalty. To conclude other-

---

[1] The security agreement provisions read as follows:

"A Land Contract of even date is executed between the parties covering land and the building in which are located the property described in this Security Agreement and it is agreed that a default in the payment of any sums due under the terms of said Land Contract shall be considered as a default under the terms of this Security Agreement, and it is further agreed that this Security Agreement will remain in full force and effect until full payment of principal and interest under the terms of said Land Contract."

The land contract contained the following clause:

"The Buyer shall have possession of the premises above described under this contract on October 4th, 1968, and shall be entitled to retain possession thereof only so long as there is no default on his part in carrying out the terms and conditions hereof plus the terms and conditions of a certain Security Agreement of even date executed between the parties hereto and covering the items of property other than real property involved in the sale of the business operation known as the Avalon Bar in Mount Pleasant, Michigan."

The preliminary sales agreement contained the following paragraph:

"It is expressly agreed by the parties hereto that any default under either promissory note mentioned herein or under the Land Contract to be entered into, shall constitute default on both of the others, irrespective of the fact that any grace period on one or the other may not have expired, and the Seller may, under the terms of the notes, declare the entire remaining balance due and look to their security and take such other action as is necessary to obtain possession of the premises. In the event of default, the Buyer agrees to execute such documents as shall be necessary to re-assign all liquor licenses to Seller."

wise would violate the clear written intent of the parties.

Based upon the practicalities of the situation, it is quite clear that the plaintiff bargained for the reassignment provision to avoid being left in the undesirable position of owning the land, building and bar fixtures without a liquor license. Such a provision is clearly authorized by MCLA 440.9501; MSA 19.9501.[2] This statute has been construed by this Court in *Michigan National Bank v Marston,* 29 Mich App 99; 185 NW2d 47 (1970), where it was held that the Uniform Commercial Code, as adopted in the state, was intended to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies.

Accordingly, we conclude that the parties intended to, and did in fact, enter into two separate agreements in effectuating the sale of the Avalon Bar. The summary proceedings resulting in the forfeiture of the land contract did not bar a subsequent action on the bill of sale, promissory note and security agreement. The trial court erred in failing to entertain plaintiff's suit.

Reversed and remanded for proceedings consistent with this opinion. Costs to appellant.

---

[2] MCLA 440.9501; MSA 19.9501 reads:

"When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) *those provided in the security agreement.* He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents, or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in section 9207. The rights and remedies referred to in this subsection are cumulative." (Emphasis added.)