ORLEY ENTERPRISES, INC v TRI-POINTE, INC

Docket No. 147428. Submitted April 12, 1994, at Detroit. Decided
    September 6, 1994, at 9:30 A.M.

Donald C. and Rudale W. Austin brought an action in the Wayne
    Circuit Court against Orley Enterprises, Inc., alleging breach of
    a lease agreement. Orley, which had assigned the lease and
    financed the sale of its business assets to Lyons & Company,
    Inc., pursuant to an asset purchase agreement and promissory
    note, brought a third-party action against Tri-Pointe, Inc., and
    others who had succeeded Lyons & Company as assignees of the
    lease and purchasers of the business assets and who had
    returned the business assets to Orley following their default on
    the lease. Orley contended that it was entitled to both a return
    of the business assets and payment on the promissory note
    under the terms of the asset purchase agreement. The court,
    Michael L. Stacey, J., granted summary disposition for the
    third-party defendants, ruling that return of the business assets
    and payment on the promissory note were alternative, and not
    cumulative, remedies under the asset purchase agreement.
    Orley appealed.

    The Court of Appeals held:

    1. The default provision of the asset purchase agreement
    provides for the remedy of return of the business assets or
    payment of the balance owed under the agreement, but not
    both.

    2. The promissory note and the asset purchase agreement
    were part of the same transaction. Orley may not pursue a
    separate action on the promissory note because to allow it to do
    so could result in double redress for a single injury, which
    would be contrary to the doctrine of election of remedies.

    Affirmed.

    TAYLOR, J., dissenting, stated that the default provision of the
    asset purchase agreement provides for the cumulative, and not
    mutually exclusive, remedies of return of the business assets
    and payment of the balance due, that the cumulative remedies
    do not violate the doctrine of election of remedies because the
    remedies could have been intended for distinct injuries, and
    that other provisions in the asset purchase agreement and the

promissory note precluded merger of the promissory note and asset purchase agreement.

*Paskin, Nagi & Baxter, P.C.* (by *Jeannette A. Paskin* and *Daniel J. Seymour*), for Orley Enterprises, Inc.

*H. Nathan Resnick,* for Tri-Pointe, Inc., Pamela Lyons, and Robert Marzolino.

*Cresence C. Schwartz,* for Michelle Lyons.

Before: SHEPHERD, P.J., and TAYLOR and R. D. GOTHAM,* JJ.

SHEPHERD, P.J. On February 8, 1991, Donald C. and Rudale W. Austin sued Orley Enterprises, Inc., and Lyons & Company, Inc., for breach of a lease and damages.[1] On March 19, 1991, contemporaneous with its response to plaintiffs' complaint, Orley filed a third-party complaint against the assignees of the lease, Tri-Pointe, Inc., Pamela Lyons, Michelle Lyons, and Robert Marzolino, alleging default on the lease and seeking indemnification, damages under an asset purchase agreement, and payment of a promissory note. The primary action was resolved on November 26, 1991, when the court entered consent judgments against Orley and Lyons & Company. On July 3, 1991, Orley moved for partial summary disposition in the third-party action, which the court denied. Subsequently, third-party defendants moved for summary disposition, arguing that by demanding return of the business, Orley had foreclosed the possibility of pursuing any other remedies for the default on the lease. In an order dated November

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiffs also sued Over the Rainbow, Inc., a prior lessee; however, a discussion of that party's interest is not necessary for purposes of this appeal.

25, 1991, the trial court dismissed the third-party complaint. Orley appeals from that order as of right. We affirm.

The focal point of this case is an agreement between Orley and Lyons & Company for the transfer of Orley's lease with the Austins, and the purchase of Orley's business assets. On March 17, 1990, before the lease was assigned to Lyons & Company, Orley and Lyons & Company entered into an asset purchase agreement. Pursuant to the terms of the agreement, Orley sold Lyons & Company the leasehold improvements, equipment, fixtures, supplies, business documentation, business name, goodwill, and telephone number for $85,000. The payment terms in the agreement provided that, at the time of the closing, Lyons & Company was to deliver to Orley a security agreement, a Uniform Commercial Code financing statement, and a promissory note in the amount of $70,000. Further, the agreement provided that in order to secure payment of the note, Lyons & Company's shareholders were required to personally and individually guarantee payment of the security agreement and promissory note. The asset purchase agreement was made contingent on Orley securing plaintiffs' consent to assign the lease of the property to Lyons & Company. Orley assigned its lease to Lyons & Company on April 16, 1990. Subsequently, the asset purchase agreement was assigned to Tri-Pointe, Inc., a successor in interest to Lyons & Company.

On April 30, 1990, third-party defendants signed a promissory note, the terms of which paralleled those outlined in the asset purchase agreement, with a principal amount of $70,000. Pamela Lyons signed the note in her individual capacity and as

president of Tri-Pointe, Inc. Michelle Lyons and
Robert Marzolino signed in their individual capaci-
ties.

After third-party defendants defaulted on the
lease, they returned the business to Orley as de-
manded by Orley. Subsequently, Orley sought pay-
ment of the balance owing under the purchase
agreement. Orley argued that it was a holder in
due course of the promissory note and was entitled
to payment on the note. The trial court denied
Orley's motion for summary disposition. Later,
third-party defendants brought their own motion
for summary disposition, arguing that Orley was
precluded from demanding payments under the
asset purchase agreement or the promissory note
because Orley had elected to have the business
returned. The trial court granted third-party de-
fendants' motion for summary disposition.

On appeal, Orley argues that the trial court
erred in dismissing its third-party complaint. Or-
ley argues that it may maintain a separate action
to recover principal and interest on the promissory
note in addition to its recovery of the business
under the terms of the purchase agreement. In
response, third-party defendants argue that the
trial court properly granted summary disposition
in their favor. Third-party defendants argue that
Orley is barred from seeking recovery under the
promissory note because the business has been
returned.

This Court interprets language in contracts ac-
cording to its plain meaning. *Rome v Sinai Hosp,*
112 Mich App 387, 392; 316 NW2d 428 (1982).
Where written documents are unambiguous and
unequivocal, their construction is for the court to
decide as a matter of law. *Mt Carmel Mercy Hosp*

*v Allstate Ins Co,* 194 Mich App 580, 588; 487
NW2d 849 (1992).[2]

In the present case, the default provision in the
asset purchase agreement provided in relevant
part as follows:

> In the event of Default by the Purchaser in any
> material aspect of any of the terms of this Agree-
> ment, including but not limited to, failure to pay
> rent and failure to pay Seller for a period in
> excess of sixty (60) days, Seller shall have the
> option of:
> (a) Demanding payment of the total balance due
> under this Agreement;
> (b) Requiring Purchaser to return ownership of
> the business to Seller, including the lease, all
> fixtures, furniture and equipment, existing on the
> date of closing and anything subsequently added
> by Purchaser up to the date of election of remedies
> by Seller. Upon this election by Seller, Purchaser
> shall execute any and all necessary documents to
> effect the total transfer of the business and the
> lease to Seller.

Our interpretation of the plain meaning of the
default provision is that Orley could elect either to
demand payment of the total balance due under
the agreement or to require the return of the
business. *Rome, supra; Mt Carmel, supra.* Orley
argues that the absence of the disjunctive term
"or" between options a and b indicates that the
remedies are concurrent rather than mutually
exclusive. However, the language in the provision
concerning the seller's "election of remedies" and
the "option" of the two choices convinces us that
Orley was required to choose one of the two reme-
dies.

[2] The prior published opinion in *Mt Carmel, supra,* was vacated in
part on other grounds on rehearing. See *Mt Carmel Mercy Hosp v
Allstate Ins Co,* unpublished opinion per curiam of the Court of
Appeals, decided March 22, 1993 (Docket No. 119978).

In the alternative, Orley argues that regardless of its remedies under the purchase agreement, it should be permitted to pursue a separate action as a holder in due course of the promissory note. We disagree with Orley's position. Here, the promissory note and the purchase agreement were clearly all part of the same transaction. Indeed, the purchase agreement dictated the terms of the promissory note. To allow Orley to pursue a separate action on the promissory note would run contrary to the doctrine of election of remedies. *Riverview Cooperative, Inc v First Nat'l Bank & Trust Co of Michigan,* 417 Mich 307, 311; 337 NW2d 225 (1983). In the present case, to allow a separate action on the promissory note would be logically inconsistent with Orley's prior election to have the business returned, and could result in double redress for a single injury. *Id.* at 312, 322; *Jim-Bob, Inc v Mehling,* 178 Mich App 71, 91; 443 NW2d 451 (1989); *Gersonde Equipment Co v Walters,* 363 Mich 49, 54; 109 NW2d 1 (1961).

The cases cited by Orley on appeal, *McBride v Arends,* 79 Mich App 440; 263 NW2d 5 (1977), and *Badour v Zifkin,* 96 Mich App 325; 292 NW2d 201 (1980), are distinguishable from the situation in the present case because in each of those cases the Court found that separate agreements pertained to different property interests. In the present case, both the promissory note and the default provision in the purchase agreement provided security for the same business assets. Thus, *McBride* and *Badour* are inapposite to the case at bar.

Similarly, *Production Finishing Corp v Shields,* 158 Mich App 479; 405 NW2d 171 (1987), is distinguishable from the present case. In that case, the plaintiff sought damages for breach of fiduciary duties, diversion of a corporate opportunity, and breach of an employment contract. *Id.* at 495.

Although all of the claims therein arose out of the same course of conduct by the defendant, the counts sought different categories of damages, i.e., lost profits as opposed to bonuses. *Id.* In the present case, both the promissory note and the default provision in the purchase agreement were intended to provide a remedy for the same underlying harm—breach of the purchase agreement. Thus, *Production Finishing* is also inapplicable to the present case.

Accordingly, the trial court properly granted summary disposition for third-party defendants because Orley has already been afforded a remedy through the return of the business. *Riverview Cooperative, supra* at 311-312. We do not share the dissent's concern that this opinion will contribute to the drying up of venture capital in the case of small start-up businesses. This case is of much less significance than the dissent would imply. The case involves nothing more than an interpretation of a specific agreement. Other agreements exist under which it is clear that all remedies are cumulative. This was not such an agreement. In the grand scheme of American entrepreneurialism, free enterprise survives notwithstanding the inartful and unwise language of one transaction out of the thousands that are consummated every day.

Affirmed.

R. D. GOTHAM, J., concurred.

TAYLOR, J. *(dissenting.)* I respectfully dissent.

When contractual language is clear, its interpretation is a question of law for the court. When presented with a dispute, a court must determine what the parties' agreement is and enforce it. Contractual language should be given its plain and ordinary meaning. *G & A, Inc v Nahra,* 204 Mich App 329, 330-331; 514 NW2d 255 (1994). Our task,

then, is to determine if the language at issue is ambiguous.

The parties in this case provided for default remedies in the purchase agreement as follows:

> In the event of Default by the Purchaser in any material aspect of any of the terms of this Agreement . . . Seller shall have the option of:
> (a) Demanding payment of the total balance due under this Agreement;
> (b) Requiring Purchaser to return ownership of the business to Seller, including the lease, all fixtures, furniture and equipment, existing on the date of closing and anything subsequently added by Purchaser up to the date of election of remedies by the Seller. Upon this election by Seller, Purchaser shall execute any and all necessary documents to effect the total transfer of the business and the lease to Seller.

It is necessary to determine if clauses a and b are to be read conjunctively or disjunctively. Because the parties have used common English grammar, reference to the rules that control such punctuation is appropriate. Semicolons are commonly used to separate items in a list when the items themselves are lengthy or contain commas; when so used they act to join, not to contrast. If the choices are to be mutually exclusive, it is customary to place the word "or" after the semicolon. Simply stated, it is proper under these neutral grammatical principles to read an "and," not an "or," following the semicolon in clause a. Thus, the remedies in a and b are cumulative, i.e., the seller can use them both.

Much is made in the majority opinion of the doctrine of election of remedies. It is argued, in effect, that the election of remedies language in clause b requires the seller to elect between a and b, and possibly even the remedies in the promissory note. This is incorrect on all fronts.

First, underlying the majority's analysis is a misunderstanding of the doctrine of election of remedies. An election of remedies is not intended to prevent recourse to alternate remedies, but, rather, to prevent double redress for a single injury. *Riverview Cooperative, Inc v First Nat'l Bank & Trust Co of Michigan,* 417 Mich 307, 312; 337 NW2d 225 (1983). If the alternate remedies are consistent or cumulative, the doctrine never comes into play. *Id.,* pp 312-313; *Production Finishing Corp v Shields,* 158 Mich App 479, 495; 405 NW2d 171 (1987). The majority's application of this doctrine depends on the unexplained assumption that "both the promissory note and the default provision in the purchase agreement were intended to provide a remedy for the same underlying harm." It is not at all certain that this was the intent of the parties and, therefore, unless such intent is proved, the election of remedies is not required.

For example, the damages under clause a of the promissory note might have been intended to remedy unpaid property taxes or waste to the business realty or equipment. Such arrangements are permissible should parties choose to so contract. Indeed, in *Ames v Maxson,* 157 Mich App 75, 80, 83; 403 NW2d 501 (1987), this Court, interpreting the summary proceedings statute, MCL 600.5750; MSA 27A.5750, held that damages and forfeiture were both allowed. Similarly, in *Davis v Louis G Palmer Co,* 262 Mich 76, 78; 247 NW 112 (1933), a lessor brought a summary proceeding against a defaulting lessee and was awarded restitution of the premises and rent due. The lessor also kept the lessee's deposit of $1,250, which the lease provided would be retained as damages in the event of a default. Reversing the trial court's award of this amount to the lessee, the Supreme Court noted that the lessee's use of the property as a parking lot had required the demolition of buildings and

the leveling of the land. *Id.*, p 81. The lessor had small hope of leasing this property again without first making improvements. Thus, the lessor was entitled to retain the deposit to make him whole after the lessee's default, despite the successful summary proceedings.

There can be no question, then, that such provisions in a private contract to allow forfeiture and damages are permissible and in accord with public policy. The contract should be enforced as written to allow both remedies.

Further, the remedies under the promissory note should not be held to be merged into the purchase agreement because of the express anti-merger language that the parties adopted. Section 13.07 of the purchase agreement clearly states:

> This Agreement shall survive the closing and not merge in the documents delivered at the closing.

Section 2.3(d) of the agreement indicates that the promissory note was one of the documents that Lyons and Company was to deliver at the closing. This was done and the instruments should not be merged.

Moreover, the majority's assumption that double recovery would result from an award on the promissory note is contradicted by the parties' stated intent in the note:

> This Note made in the State of Michigan, shall be construed according to the laws thereof, and if any provision[s] hereof are in conflict with any statute or rule of the law of the State of Michigan or are otherwise unenforceable for any reason whatsoever, then such provision(s) shall be deemed null and void to the extent of such conflict or unenforceability, but shall be deemed separable from and shall not invalidate any other provisions hereof.

This provision precludes a verdict for Orley on the promissory note only to the degree the factfinder determines that a double recovery would result and, even then, only if such recovery is not contemplated by the parties, as evidenced by the language of their contractual agreement.

In my view, then, both provisions in the purchase agreement are cumulatively enforceable and the promissory note was not merged into the purchase agreement and is independently enforceable. Thus, I would reverse the trial court's decision and remand this case for further proceedings consistent with this determination.

It is important, I believe, to comment upon the unfortunate policy implications of the majority's handling of this matter. Many entrepreneurial endeavors are undertaken by financially precarious entities or individuals. It is axiomatic that we are all better off because of their efforts, for by such means are jobs, even whole industries, created. Yet, when one contracts with such a fledgling entity, the traditional safeguard for those who provide goods and products, or, as in this case, a building, has been to demand strong, financially secure individuals or entities to guarantee the payments of the entrepreneur. Without such assurances, there will be reasonable reluctance to contract with them. Because we wish to facilitate commerce with struggling, undercapitalized business ventures, the law should encourage arrangements such as the ones at issue. To not do so will only serve to dry up funds and services to start-up businesses.