# STATE OF MICHIGAN

# COURT OF APPEALS

OUTFRONT MEDIA, LLC,

        Plaintiff/Counterdefendant-
        Appellee,

v

CYA PROPERTIES, LLC,

        Defendant/Counterplaintiff-
        Appellant.

UNPUBLISHED
October 25, 2018

No. 338335
Wayne Circuit Court
LC No. 16-010975-CB

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant/counter-plaintiff, CYA Properties, LLC ("CYA"), appeals as of right the trial court's order granting plaintiff/counter-defendant, Outfront Media, LLC's ("Outfront"), motion for summary disposition. This matter arises out of CYA's purchase, at a tax foreclosure auction, of an otherwise-vacant parcel of land on which Outfront leased space for and maintained a billboard. CYA believed it had acquired the billboard in addition to the land. The trial court found that Outfront owned the billboard and entered an order permitting its removal. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On April 1, 2015, the Wayne County Treasurer foreclosed on the property for unpaid real property taxes. CYA subsequently purchased the property at a tax sale auction for $24,000. CYA received a deed for the property dated December 16, 2015. On the basis of a "bill of sale" found in the property's chain of title, CYA believed that it had purchased not only the real property, but also the billboard on the property. The billboard prominently bore Outfront's name. CYA's agent, Ari Kresch, requested that Outfront not access or service the billboard until an agreement could be reached on a new lease. The parties were unable to reach an agreement, and CYA refused to acknowledge Outfront's ownership of the billboard. Outfront filed the instant action seeking to recover and remove the billboard, and CYA counterclaimed for trespass and back rent. The trial court ruled in favor of Outfront.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record "to determine if the moving party is entitled to judgment as a matter of law." *Maiden v*

*Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. When reviewing a motion under MCR 2.116(C)(8), which tests the legal sufficiency of the plaintiff's claims, this Court accepts all factual allegations in the challenged pleadings as true. *Spiek v Dep't of Transp*, 456 Mich 331, 337-339; 572 NW2d 201 (1998). The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

### III. OWNERSHIP OF THE BILLBOARD

CYA argues that there is a question of material fact regarding ownership of the billboard. Specifically, CYA argues that the billboard constitutes an "improvement[s] and appurtenance[s] thereto" as described in a "bill of sale" in the parcel's chain of title, and CYA had no notice of Outfront's interest in the billboard because Outfront failed to record its lease. We disagree.

### A. THE BILL OF SALE

Initially, a "bill of sale" is not one of the listed methods of transferring real property mentioned in Chapter 565 of the Michigan Compiled Laws, governing conveyances of real estate. Case law suggests that a "bill of sale" may commonly be used as an instrument of conveyance for fixtures, personal property, or business interests in tandem with a land contract. See, e.g., *Hoskey v Hoskey*, 7 Mich App 122, 124-126; 151 NW2d 227 (1967); *McBride v Arends*, 79 Mich App 440, 441; 263 NW2d 5 (1977); *VanElsaker v Erzberger*, 137 Mich App 552, 554-555; 357 NW2d 891 (1984). Examination of the specific document here reveals it to be functionally equivalent to a memorandum of a land contract, reciting that the purchaser had paid $8,000 at closing and then was to make $1,500 payments until the remainder of the $40,000 purchase price was paid off. The "bill of sale" appropriately describes the real property to be conveyed. However, although it notes the inclusion of "improvement[s] and appurtenance[s] thereto," it does not explain what, if any, improvements and appurtenances were present.

This Court has unambiguously established "that billboards are properly characterized as trade fixtures and personal property rather than realty." *Outdoor Systems Advertising, Inc v Korth*, 238 Mich App 664, 671; 607 NW2d 729 (1999). This Court has further defined trade fixtures as follows:

> "A trade fixture is merely a fixture which has been annexed to leased realty by a lessee for the purpose of enabling him to engage in a business. The trade fixture doctrine permits the lessee, upon the termination of the lease, to remove such a fixture from the lessor's real property. *Michigan Nat'l Bank, Lansing v Lansing*, 96 Mich App 551, 555; 293 NW2d 626 (1980), aff'd 414 Mich 857 (1982).

Outfront and its predecessors had maintained an active lease allowing for the placement of the billboard structure dating back more than 40 years, and the lease was active when the parcel of land was foreclosed upon. Consequently, there had been no period of abandonment or any other event that would lead a reasonable individual to believe the billboard structure had become part

of the real property. Outfront's leases, from its original lease in 1971, through the final lease, entered into in 2009, all stated that the billboard was Outfront's property. The applicable law and Outfront's leases unambiguously establish that the billboard was the personal property of Outfront. Therefore, the only real issue is whether Outfront's acceptance of the bill of sale as proof of a transfer of ownership constituted a tacit endorsement of that instrument's purported transfer of the billboard.

The trial court correctly observed that the mere presence of words in a transfer document does not permit the conversion of property that the parties had no right to convey. An instrument of conveyance may be valid as to property actually owned by the conveyor, but is void as to any purported conveyance of property that the conveyor does not own. See *Wallace v Harris*, 32 Mich 380, 399-402 (1875); *West Mich Park Ass'n of Ottawa Beach v DNR*, 91 Mich App 641, 643; 283 NW2d 744 (1979); see also *DNR v Carmody-Lahti Real Estate Inc*, 472 Mich 359, 362, 388, 391; 699 NW2d 272 (2005). Notably, the bill of sale does not even appear to transfer title, but rather merely evidenced a land contract relationship between buyer and seller. Even if it purported to convey the billboard, which is dubious, because the seller did not own the billboard, any such conveyance was a nullity. The trial court correctly found "no legal basis" for CYA's argument that Outlook's recognition of a real property transfer constituted a conveyance of its billboard.

## B. THE RECORDING ACT

CYA argues that it was a bona fide purchaser that took the property without actual or constructive notice of Outfront's interest in the billboard. CYA notes particularly that the bidding prices at the auction were significantly higher than the true value of the land, suggesting that the billboard was included. CYA also argues that because billboards are sometimes leased structures not owned by the permit holder, Outfront's permit and its name on the billboard were insufficient to give CYA notice. CYA also notes that because the leases were not recorded, there was no constructive or actual notice to be discovered via a title search. We disagree.

Michigan's recording statute, MCL 565.29, is a race-notice statute that provides, in pertinent part:

> "[e]very conveyance of real estate within the state hereafter made, which is not recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for valuable consideration, of the same real estate or portion thereof, whose conveyances shall be first duly recorded."

A good faith purchaser under MCL 565.29 must purchase the subject real estate without actual or constructive notice of an unrecorded interest. *Coventry Parkhomes Condo Ass'n v Federal Nat'l Mortgage Ass'n*, 298 Mich App 252, 256; 827 NW2d 379 (2012). A subsequent purchaser will prevail in right over any prior interests only if that purchaser records their interest first and with no notice of any prior interests, whether actual or constructive. This Court has defined that requirement as:

> [n]otice is whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature

by inquiry. Notice need only be of the possibility of the rights of another, not positive knowledge of those rights. Notice must be of such facts that would lead any honest man, using ordinary caution, to make further inquiries in the possible rights of another in the property. *Schepke v Dep't of Natural Resources*, 186 Mich App 532, 535; 464 NW2d 713 (1990).

When an individual has knowledge of the *possibility* of another's interest, that individual is responsible for any inquiries necessary to ascertain whether or not such an interest exists. A purchaser who fails to do so is deemed to have notice of whatever any of those possible interests would be, and therefore takes subject to them. *Kastle v Clemons*, 330 Mich 28, 31; 46 NW2d 450 (1951).

We find CYA's arguments unpersuasive, if not frivolous. The point of the race-notice doctrine and Michigan's race-notice statute is not to determine what a purchaser *actually* knew, but what a purchaser *should* have known. See *Kastle*, 330 Mich at 31. It is difficult to imagine what could be more open and manifest than a muli-ton, multi-story steel structure with Outfront's name on it in addition to a permit number that clearly tied the billboard to Outfront. At most, CYA has established that it was *possible* for the billboard to have been included with the real property. However, CYA knew there was a billboard structure on the property prominently displaying Outfront's name. Therefore, CYA was on notice to inquire as to any outstanding interests that might exist affecting the parcel. Indeed, the fact that shortly after the auction CYA contacted Outfront in order to discuss lease terms proves that CYA was aware that Outfront had some interest in the billboard. Because Outfront made no misrepresentations of its ownership, or lack thereof, that CYA relied upon in making its bids, Outfront has no culpability for CYA's poor investment.

## C. SUMMARY

There is no issue of material fact concerning ownership of the billboard, and there is no issue of material fact concerning CYA's actual or constructive notice of Outlook's interest in the billboard. Therefore, the trial court properly granted Outfront's motion for summary disposition.

## III. TRESPASS AND BACK RENT

CYA argues that because there is a question of fact as to who owns the billboard, and because the billboard was on land that CYA unequivocally owned, Outfront committed a trespass[1] when it serviced the billboard via ladders extended from outside of CYA's property. CYA also argues that it should be allowed to recover any rents Outlook would have normally paid under the lease agreements for the duration of Outlook's maintenance of the billboard. We disagree.

---

[1] CYA admits that it incorrectly referred to a criminal trespass statute in its motion for summary disposition, but believes the trial court should have looked beyond CYA's error and considered a common law, civil claim for trespass. We find it unnecessary to consider this argument because, as we will discuss, CYA has no viable civil claim for trespass.

## A. APPLICABLE LAW

A trespass regarding real property is an offense against rightful possession rather than title ownership. See *Terlicki v Stewart*, 278 Mich App 644, 653-654; 754 NW2d 899 (2008). If a tenant remains on leased premises after the expiration of the lease, the landlord generally acquires a right to treat the holdover tenant[2] as a trespasser and eject the tenant. *Scott v Beecher*, 91 Mich 590, 592; 52 NW 20 (1892). However, the landlord may also acquiesce in the holdover tenant's continued possession, whereupon the holdover tenant acquires a right to be given notice to quit, at least where the landlord desires to oust the tenant before the end of a definite and specific renewed lease term. *Id.*; *Rice v Atkinson, Deacon, Elliot Co*, 215 Mich 371, 378-379; 183 NW 762 (1921). Importantly, acquiescence by the landlord may be implied by the circumstances and conduct of the parties. *Scott*, 91 Mich at 592. Furthermore, it has long been held that unless a landlord provides some manner of notice to a holdover tenant, the tenant may infer permission to remain: "it is the landlord's own folly or negligence to suffer the tenant to remain; since, if he wanted the possession, he ought to demand it, or re-enter . . . " *Hogsett v Ellis*, 17 Mich 351, 369 (1868).

## B. APPLICATION

Here, CYA made no demand of Outfront to vacate the premises. To the contrary, following the tax auction sale, CYA's resident agent contacted Outfront in order to begin lease negotiations and advised Outfront not to access the property, because CYA had secured the property with its own lock. We find that CYA's conduct clearly constituted acquiescence to Outfront's continued tenancy. However, CYA also asked that Outfront not service or make any change to the copy on the billboard without CYA's permission. As previously discussed, CYA had no ownership interest in the billboard, and therefore it had no right to dictate to Outfront how to utilize Outfront's property. Outfront was able to service the billboard without physically entering CYA's property by extending a ladder from outside of the property to the billboard in order to perform maintenance and change advertising copy.

When negotiations over a new lease broke down, CYA prohibited Outfront from removing the billboard structure from the property, forcing Outfront to initiate this action. Because the property was not CYA's to control, CYA cannot contend that Outfront engaged in a trespass. In order to recover for trespass or for any other use of the property, CYA would have first had to demand that Outfront engage in a new lease or remove the billboard. Instead, CYA chose to prevent Outfront from removing the billboard, then demanded that Outfront pay to use the billboard, and finally accused Outfront of trespassing for utilizing Outfront's own property. CYA's conduct in this matter not only displayed clear acquiescence to the billboard remaining on its property, but in fact CYA affirmatively attempted to preclude the billboard's removal. For

---

[2] Historically, "a tenant who came into possession rightfully, by permission of the owner, and continued to occupy the premises after the expiration of his lease" was known as a "tenant by sufferance." *Ryal's, Inc v Stavropoulous*, 273 Mich 680, 681; 263 NW 770 (1935).

CYA to now contend that it suffered a trespass due to Outfront continuing to maintain the billboard approaches chutzpah.[3] Any harm CYA suffered was brought upon itself.

CYA's attempts to recover for any rents are governed by the same case law as trespass. A landowner cannot force a tenant to pay rent if the landowner has neither informed the tenant of their desire to sever the relationship nor attempted to evict the tenant. CYA cannot simply hold Outfront's billboard hostage and then, when doing so was found illegal, turn around and ask Outfront for rent for the privilege of being held hostage.

## C. SUMMARY

The trial court correctly denied CYA's counter-motion for summary disposition seeking damages for trespass and back rent.

## IV. CONCLUSION

Affirmed. Outfront, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause

---

[3] This Court has described the "classic example of chutzpah" as the kind of gall shown by "a defendant who, about to be sentenced for murdering his parents, begs the mercy of the sentencing court because he is an orphan." *Bachus v West Traverse Twp*, 122 Mich App 557, 558-559; 332 NW2d 535 (1983).