PRODUCTION FINISHING CORPORATION v SHIELDS

Docket No. 80895. Submitted November 7, 1986, at Detroit. Decided
March 16, 1987. Leave to appeal applied for.

Production Finishing Corporation did most, if not all, the steel
polishing work in the Detroit area with the exception of the
steel polishing work for Ford Motor Company, which had its
own polishing plant. Peter F. Shields, president and a member
of the Board of Directors of Production, negotiated with Ford
Motor Company in an attempt to persuade Ford to let Produc-
tion take care of Ford's polishing needs. Ford informed Shields
that Ford would not agree to such an arrangement because
Production would then have a virtual monopoly on the steel
polishing business in the Detroit area. Shields then on his own
behalf began negotiating with Ford in an attempt to persuade
Ford to allow Shields to do its polishing work if Shields formed
a polishing business of his own. Negotiations continued and
Shields started his own business, Flat Rock Metal, Inc., with
the intent that Flat Rock would perform the polishing services
for Ford. It was not until after Shields resigned from Produc-
tion that he informed the Production Board of Directors that
he was pursuing the Ford business himself. Production filed
suit against Shields and Flat Rock Metal, Inc., in Wayne
Circuit Court alleging that Shields had usurped a corporate
opportunity, breached his fiduciary duties as an officer and
director of Production and breached his employment contract

REFERENCES

Am Jur 2d, Agency §§ 228 *et seq.*

Am Jur 2d, Contracts § 172.

Am Jur 2d, Corporations §§ 1689, 1770, 1773, 1786, 1788.

Am Jur 2d, Election of Remedies §§ 1 *et seq.;* 10 *et seq.*

Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
Practices §§ 447, 457, 542 *et seq.*

Fairness to corporation where "corporate opportunity" is allegedly
usurped by officer or director. 17 ALR4th 479.

Enforceability, insofar as restrictions would be reasonable, of con-
tract containing unreasonable restrictions on competition. 61
ALR3d 397.

See also the annotations in the Index to Annotations under Elec-
tion of Remedies.

with Production. The court, Charles Kaufman, J., granted summary judgment in favor of plaintiff on the breach of employment contract count. A jury trial on the remaining issues resulted in a verdict in favor of defendants on those issues. Plaintiff's motion for judgment notwithstanding the verdict was denied. Plaintiff appealed from the jury verdict and the denial of its motion for judgment notwithstanding the verdict and defendants cross-appealed from the granting of summary judgment in favor of plaintiff on the breach of employment contract claim.

The Court of Appeals *held:*

1. The trial court erred by failing to grant plaintiff's motion for judgment notwithstanding the verdict on plaintiff's claim that Shields breached his fiduciary duties and diverted a corporate opportunity of plaintiff. The fact that Ford declared that it did not want Production to perform its polishing services does not relieve Shields of liability because he failed to satisfy the duty of disclosure which he owed to Production.

2. The trial court did not err in granting summary judgment in favor of plaintiff in regard to plaintiff's breach of employment contract claim.

3. Plaintiff's recovery for breach of the employment contract does not bar recovery of damages for Shields' breach of fiduciary duties and usurpation of a corporate opportunity. The doctrine of election of remedies does not apply to this case.

Affirmed in part, reversed in part and remanded for further proceedings regarding damages.

1. CORPORATIONS — DIRECTORS — OFFICERS — FIDUCIARY DUTIES.

The appropriation of a corporate opportunity by an officer or director of a corporation for his own personal gain constitutes an actionable breach of fiduciary duties.

2. CORPORATIONS — DIRECTORS — OFFICERS — FIDUCIARY DUTIES.

Directors and officers of corporations are fiduciaries who owe a strict duty of good faith to the corporation they serve.

3. AGENCY — PECUNIARY ADVANTAGES.

An agent who acquires pecuniary advantage to himself from third parties by means of his fiduciary character is accountable to his employer for the profit made.

4. CORPORATIONS — DIRECTORS — OFFICERS — FIDUCIARY DUTIES — REFUSAL TO DEAL — DISCLOSURE.

A third party's purported refusal to deal with a corporation will not relieve a fiduciary of the corporation from liability for

appropriation of a corporate opportunity when he has failed to disclose the refusal to his principal.

5. CONTRACTS — COVENANTS NOT TO COMPETE — ILLEGAL CONTRACTS.

A covenant not to engage in business which was unenforceable when entered into does not become enforceable upon the repeal of the statute declaring such covenants illegal (MCL 445.761; MSA 28.61).

6. CONTRACTS — COVENANTS NOT TO COMPETE — ILLEGAL CONTRACTS.

A contract provision which merely deters an employee from engaging in competition with his employer is not improper under a statute which make contracts not to engage in business illegal.

7. CONTRACTS — RESTRAINT OF TRADE.

An agreement in restraint of trade must be reasonable to be enforced; to determine reasonableness courts look at the public interest, the former employee's interest in continuing employment, and the interest of the employer.

8. ELECTION OF REMEDIES — APPLICATION.

The doctrine of election of remedies is a procedural rule which precludes one to whom there are available two inconsistent remedies from pursuing both; the purpose of the doctrine is not to prevent recourse to alternative remedies, but to prevent double redress for a single injury and, in order for the doctrine to apply, three prerequisites must exist: (1) at the time of the election, there must have been two or more remedies available; (2) the alternative remedies must be inconsistent rather than consistent and cumulative; and (3) the party must have chosen and pursued one remedy to the exclusion of the others.

9. ELECTION OF REMEDIES — INCONSISTENT REMEDIES.

Remedies, to be inconsistent for purposes of the doctrine of election of remedies, must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other; inconsistency may arise either because one remedy must allege as fact what that other denies or because the theory of one must necessarily be repugnant to the other.

*Bushnell, Gage, Doctoroff & Reizen* (by *John K. Parker*), and *Arnstein, Gluck, Lehr, Barron & Milligan* (by *Richard K. Wray* and *Michael J. Ranallo*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *B. I. Stanczyk, John P. Jacobs, Ernest R. Bazzana* and *Anthony J. Rusciano*), for defendants.

Before: Hood, P.J., and T. M. Burns and J. X. Theiler,* JJ.

Per Curiam. On August 26, 1981, plaintiff Production Finishing Corporation filed suit against defendants Peter F. Shields and Flat Rock Metal, Inc., alleging that Shields had usurped a corporate opportunity of Production Finishing, breached his fiduciary duties as an officer and director of Production Finishing, and breached his employment contract with Production Finishing. The trial court granted summary judgment on April 26, 1984, in favor of plaintiff on the breach of employment contract count. Following a jury trial from April 30, 1984, through May 17, 1984, a verdict was entered in favor of defendants on the remaining counts. Plaintiff appeals as of right from the jury verdict. Defendants appeal as of right from the order of summary judgment in favor of plaintiff.

### FACTS

Defendant Shields was president of Production Finishing from January, 1974, through August, 1981, and was also a member of its Board of Directors. Production Finishing provides goods and services to the automotive industry, which includes the service of steel polishing. In 1981, Production Finishing did most, if not all, of the polishing work in the Detroit area with the exception of the polishing work for Ford Motor Company, which had its own polishing plant in Monroe,

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Michigan. A longstanding objective of Production Finishing was to obtain the Ford business if Ford decided to cease its operations in that area. Shields as a representative of Production Finishing, approached Ford on a regular basis with proposals to let Production Finishing do their polishing work.

Shields learned that Ford was considering ceasing its polishing operations and Shields brought this information to the attention of Production Finishing's Board of Directors at a meeting on April 29, 1981. Shields suggested to the board that Ford's business might be available and that Production Finishing should pursue the obtaining of Ford's polishing work and consider buying Ford's equipment to set up an additional plant to handle the work. The board requested that Shields continue to investigate the matter.

Pursuant to the board's request, Shields contacted Stan Cronenwett, the manager of the Ford Motor Monroe Plant, and arranged a meeting at which Production Finishing's proposal was discussed. Cronenwett was against the proposal because, with the Ford business, Production Finishing would have a monopoly in the area. At some point in the discussion, Shields asked Cronenwett if Ford would let him do the work in his individual capacity. In pursuit of this goal, Shields met with another Ford representative, Bill Graning, on May 28, 1981, to discuss the proposal in greater detail. Shields told Graning that if the opportunity did not exist for Production Finishing, he would like to provide the services himself. Subsequently Shields submitted a confidential proposal through his attorney to Ford which provided that he would buy Ford's equipment and provide polishing services to Ford. In the following months, Shields met with Ford representatives on several occasions to finalize these plans.

In further pursuit of this endeavor, Shields had the Ford equipment appraised and sought a loan from Manufacturer's Bank. Flat Rock Metal was incorporated on July 8, 1981, by Shields, with the intent that Flat Rock would perform the polishing services for Ford. Shields is the president and controlling stockholder of Flat Rock.

Throughout these dealings, Shields did not inform the Production Finishing Board of Directors that Ford refused to give its business to Production Finishing or that Shields was pursuing the opportunities on his own account. Shields did disclose his intentions to Omer O'Neil when he asked O'Neil to leave Production Finishing and go with him to his new company. However, O'Neil was not a member of the Board of Directors and, in fact, reported to Shields at Production Finishing. At one point during trial Shields testified that he did not want Dean Rhoads, Production Finishing's sole stockholder, to know about the Ford endeavor. It was not until after he resigned in August, 1981, that Shields informed the board that he was pursuing the Ford business himself.

## ANALYSIS

### A

Plaintiff first argues that the trial court erred by failing to grant plaintiff's motion for judgment notwithstanding the verdict on plaintiff's claim that Shields breached his fiduciary duties and diverted a corporate opportunity of plaintiff. We agree.

The jury returned a verdict in favor of defendants, finding that the Ford business and equipment was not a corporate opportunity in which production Finishing had a reasonable expectancy

and further finding that Shields did not breach his fiduciary duties to Production Finishing.

In reviewing the denial of a motion for a judgment notwithstanding the verdict, this Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether plaintiffs have satisfied their burden of proof, judgment is improper and the question is to be resolved by the trier of fact. *In re Brack Estate,* 121 Mich App 585, 588; 329 NW2d 432 (1982); *Wilson v Chesapeake & Ohio R Co,* 118 Mich App 123, 133; 324 NW2d 552 (1982), lv den 417 Mich 1044 (1983). A judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the nonmoving party. *Slanga v Detroit,* 152 Mich App 220, 224; 393 NW2d 487 (1986); *Willoughby v Lehrbass,* 150 Mich App 319, 344; 388 NW2d 688 (1986).

Reasonable minds could not honestly disagree in this case. The facts indicate that plaintiff is entitled to a judgment as a matter of law. Shields breached his fiduciary duties to the corporation by diverting a corporate business opportunity for his own personal gain. Shields did so when he pursued the Ford polishing business and purchased the Ford equipment while president of Production Finishing without full disclosure to the corporation.

It is widely recognized that the appropriation of a corporate opportunity by an officer or director will constitute an actionable breach of fiduciary duties:

> A corporate officer or director is under a fiduciary obligation not to divert a corporate business opportunity for his own personal gain. The rule is that if there is presented to a corporate officer or

director a business opportunity which the corporation is financially able to undertake which is, from its nature, in the line of the corporation's business and is of practical advantage to it, and which is one in which the corporation has an interest or a reasonable expectancy, and if, by embracing the opportunity, the self interest of the officer or director will be brought into conflict with that of this corporation, the law will not permit him to seize the opportunity for himself. If he does, the corporation may claim the benefit of the transaction. [18B Am Jur 2d, Corporations, § 1770, pp 623-624; see also 19 CJS § 785, p 161; Anno: *Fairness to corporation where "corporate opportunity" is allegedly usurped by officer or director,* 17 ALR4th 479.]

It is beyond dispute that in Michigan, directors and officers of corporations are fiduciaries who owe a strict duty of good faith to the corporation which they serve. *Salvador v Connor,* 87 Mich App 664, 675; 276 NW2d 458 (1978), lv den 406 Mich 966 (1979). In regard to a corporate officer who acts as an agent of the corporation, the Supreme Court has stated:

[A]s to engaging in other business, it is an elemental rule of agency that his duties required his efforts and activities in the line of his employment should be for the benefit of his principal, and he was not at liberty to deal in the business of his agency for his own benefit. It was his duty to communicate to his principal facts relating to the business which ought in good faith be made known to the latter. . . . The corollary to that fundamental rule is thus concisely stated in 1 Mechem on Agency (2d Ed.), § 1224:

"The well settled and salutary principle that a person who undertakes to act for another shall not, in the same matter, act for himself, results also in the other rule, that all profits made and advantage gained by the agent in the execution of

the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent if it be the fruit of the agency."

Where the agent is also an officer of a corporation for which he is acting there is added reason for rigidly adhering to the rule. [*Michigan Crown Fender Co v Welch,* 211 Mich 148, 159, 160; 178 NW 684 (1920).]

The Supreme Court has also quoted from Mechem's Outlines of Agency (1901 ed), § 148, stating:

"Except with the full knowledge and consent of his principal, an agent authorized to buy for his principal cannot buy of himself; an agent authorized to sell cannot sell to himself; an agent authorized to buy or sell for his principal cannot buy or sell for himself; nor can an agent take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense." [*Stephenson v Golden,* 279 Mich 710, 736; 176 NW 849 (1937).]

If an agent acquires any pecuniary advantage to himself from third parties by means of his fiduciary character, he is accountable to his employer for the profit made. *Id.*

There can be no dispute in this case that the potential purchase of Ford's polishing business, as well as the equipment, was, at least initially, a business opportunity which Production Finishing had an interest in and was actively pursuing. Production Finishing was in the automotive polishing business and had a large share of the area market. In fact, it appears that Ford was the last holdout. Production Finishing actively pursued Ford's business throughout Shield's tenure as president. Shields does not dispute that while president and a director of Production Finishing he

initiated the idea with Ford representatives that he, in his individual capacity, should do Ford's polishing business. In furtherance of this pursuit, he arranged for loans to purchase Ford's equipment, leased an industrial building, organized Flat Rock Metal, and talked to Production Finishing employees about employment with Flat Rock. All of these acts were carried out without disclosures, of any kind, to Production Finishing's Board of Directors. These facts establish a prima facie case in favor of plaintiff.

However, defendants have defended this case by arguing that, because of Ford's refusal to deal with Production Finishing, they should not be held liable. Defendants contend that while the potential purchase of Ford's business may have initially been a corporate opportunity for Production Finishing it ceased to be such an opportunity when Ford's representatives indicated their unwillingness to deal with Production Finishing. The trial testimony indicates that it was unlikely that Production Finishing would have obtained the Ford work. Stanley Cronenwett, plant manager at the Ford Monroe Plant, testified that he did not want to sell Ford's polishing equipment to Production Finishing because they were the only independent polishing source at the time. He felt it would be a better business deal for Ford if there were at least two independent suppliers of the steel polishing services. Carl Granning, steel purchasing agent at Ford, testified that inferences he received from his superiors were that the Ford business should not go to Production Finishing because it was the only company in the area providing the polishing services. John Scicluna, director of facilities and tool purchasing at Ford, testified that he disregarded Production Finishing as a potential purchaser of the Ford equipment because Production Finishing

would then have been a monopoly. Scicluna testified that even if Production Finishing made a more attractive offer, or if Shields had not made an offer on his own behalf, Ford would not have sold the equipment to Production Finishing.

Despite this testimony, we must conclude that defendants remain liable.

In *Energy Resources Corp, Inc v Porter,* 14 Mass App 296, 300-301; 438 NE2d 391 (1982), the Massachusetts court stated:

> For the reason that the firmness of a refusal to deal cannot be adequately tested by the corporate executive alone, it has not been favored as a defense unless the refusal has first been disclosed to the corporation. Without full disclosure it is too difficult to verify the unwillingness to deal and too easy for the executive to induce the unwillingness.

The court further stated:

> [B]efore a person invokes refusal to deal as a reason for diverting a corporate opportunity he must unambiguously disclose that refusal to the corporation to which he owes a duty, together with a fair statement of the reasons for that refusal. [*Id.* at 302.]

We agree with the analysis of the Massachusetts court and hold that a third party's purported refusal to deal with a corporation will not relieve a fiduciary from liability when he had failed to disclose the refusal to his principal. The reason behind this rule was set out in Brudney & Clark, *A New Look at Corporate Opportunities,* 94 Harv L Rev 997, 1021 (1981), as follows:

> [I]f financial disabilities or third-party refusals to deal with the corporation are accepted as tests,

the inevitable result will be to permit the diversion. This is true because courts must resolve the legal issues on the basis of a set of facts largely within the control of the diverter.

Shields did not satisfy the duty of disclosure which he owed to Production Finishing. The disclosure of information to a lower level employee for the purpose of inducing that person to leave the company does not satisfy a fiduciary's duty to disclose relevant information to his principal.

We conclude that reasonable persons could not disagree that Shields violated his fiduciary duties by diverting the Ford business and equipment for his own personal gain. Therefore, the trial court should have granted plaintiff's motion for judgment notwithstanding the verdict.

B

Plaintiff next argues that several jury instructions were erroneous and that the special verdict form was inappropriate.

Due to our disposition of the previous issue, we need not address plaintiff's claims in this regard. However, we note that the instructions were erroneous to the extent that they were inconsistent with the forgoing analysis.

C

On cross-appeal, defendants argue that the trial court erred by granting summary judgment in favor of plaintiff in regard to plaintiff's breach of employment contract claim. We disagree.

The 1979 employment agreement between Production Finishing and Shields provided for the payment of bonuses to Shields in paragraph 3 as follows:

> In consideration of the covenants set forth in this Agreement, concurrently with the execution of the Agreement the Company is paying Shields the sum of $50,000 (subject to applicable withholding taxes) receipt of which is hereby acknowledged. In addition, subject to the provisions hereof, the Company agrees to pay Shields the sum of $300,000 (subject to all applicable withholding taxes) payable $100,000 on January 31 of each of 1981, 1982, and 1983.

These bonuses were to be paid in addition to a $100,000 salary provided elsewhere in the contract. The contract also contained a "non-compete" agreement. While some portions of the agreement actually required that Shields not engage in competitive activities, other portions merely provided that if Shields did engage in competitive activities, he would be required to refund the bonus payments:

> Shields recognizes that if he should engage in any competitive activities (as hereinafter defined) the same could cause irreparable harm to the Company and its business and goodwill, the amount of which would be difficult or impossible to calculate. Accordingly, Shields agrees that in the event that during the period of three years after the termination of Shields' employment with the Company Shields in any capacity, directly or indirectly, shall engage in, or be retained or employed by, or have any interest in or connection with, any person, firm, partnership, or corporation which is in whole or in part engaged in, any business which is in competition with the business in which the Company is now or may from time to time hereafter while Shields is employed by the Company be engaged (collectively called "competitive activities"), Shields shall refund to the Company, within five days after request therefor by the Company, an amount equal to the lesser of (i) $250,000 or (ii)

the total consideration theretofore paid by the Company under Paragraph 3 above and to the extent that amount actually refunded by Shields shall be less than $250,000, the next payments which would otherwise be payable under Paragraph 3 above shall be reduced by the amount of such deficiency.

Defendant argues that these contract refund provisions are void under MCL 445.761; MSA 28.61. That statute declared that contracts not to engage in business were illegal:

All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.

While the statute was repealed by the Legislature effective March 29, 1985, a covenant unenforceable under the former statute did not become enforceable upon its repeal. See *Compton v Joseph Lepak, DDS, PC,* 154 Mich App 360; 397 NW2d 311 (1986).

We conclude that the statute did not render the refund provisions of the contract void in this case. This contract specifically indicates that if any provision or clause is void, the other provisions and clauses remain in effect. Thus, even if the contract contained void noncompetition provisions or clauses, the refund provisions remained in effect. The refund provisions did not extract or embody a promise not to engage in employment or business after the termination of Shields' employment. Those provisions merely required Shields to forfeit his bonuses if he did so. Even though a certain contract provision is likely to deter an employee from engaging in competition, such a

provision which merely deters is not improper under the statute. See *Woodward v Cadillac Overall Supply Co,* 396 Mich 379; 240 NW2d 710 (1976); *Couch v Difco Lab, Inc,* 44 Mich App 44; 205 NW2d 24 (1972).

Even if the refund provisions were invalid, plaintiff would be entitled to a return of the money which was taken by Shields as consideration for agreeing to the provisions.

Defendants also argue that the provisions were an unreasonable restraint of trade under the common law. We disagree. For an agreement which is in restraint of trade to be enforced, it must be reasonable. *Follmer, Rudzewicz & Co, PC v Kosco,* 420 Mich 394, 408; 362 NW2d 676 (1984). Generally, the courts have looked at three interests when determining whether agreements in restraint of trade are reasonable: "the public interest, the former employee's interest in continuing employment, and the interest of the employer." *Id.* The Court in *Kosco* quoted favorably from the early case of *Hubbard v Miller,* 27 Mich 15, 19 (1873), as follows:

> [I]f, considered with reference to the situation, business and objects of the parties, and in the light of all the surrounding circumstances with reference to which the contact was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specially injurious to the public, the restraint will be held valid. [420 Mich at 408-409, n 21.]

The forfeiture provision in the instant agreement is not unreasonable. The agreement appears to have been made for a just and honest purpose. It was apparently made for the protection of the

legitimate interest of Production Finishing and does not appear to be specifically injurious to the public. It was not unreasonable for Production Finishing to want to retain a valuable executive who had access to valuable and confidential corporate information. The agreement was not an unreasonable restraint of trade.

Thus, the circuit court did not err in granting summary judgment in favor of plaintiff in regard to the beach of employment contract claim.

### D

Finally, defendants argue that plaintiff's recovery for breach of the employment contract bars recovery of any damages for Shields' breach of fiduciary duties and usurpation of a corporate opportunity because of the application of the doctrine of election of remedies. We disagree.

The doctrine of election of remedies is "a procedural rule which precludes one to whom there are available two inconsistent remedies from pursuing both." *Riverview Cooperative, Inc v First National Bank & Trust Co,* 417 Mich 307, 311; 337 NW2d 225 (1983). "Its purpose is not to prevent recourse to alternative remedies, but to prevent double redress for a single injury." *Id.* at 312. In order for the doctrine to apply, three prerequisites must exist: (1) at the time of the election, there must have been two or more remedies available; (2) the alternative remedies must be inconsistent rather than consistent and cumulative; and (3) the party must have chosen and pursued one remedy to the exclusion of the other(s). *Id.* at 312-313; see also 25 Am Jur 2d, Election of Remedies, § 8, p 652. The test of inconsistency was set out in 25 Am Jur 2d, Election of Remedies, § 11, pp 653-654, as follows:

For one proceeding to be a bar to another for

inconsistency, the remedies must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other. In this sense, inconsistency may arise either because one remedy must allege as fact what the other denies, or because the theory of one must necessarily be repugnant to the other. More particularly, where the election of a remedy assumes the existence of a particular status or relation of the party to the subject matter of litigation, another remedy is inconsistent if, in order to seek it, the party must assume a different and inconsistent status or relation to the subject matter.

The election of remedies doctrine does not apply in this case because the remedies sought by plaintiff are concurrent and cumulative rather than inconsistent. In Counts i and ii, plaintiff sought damages for breach of fiduciary duties and diversion of a corporate opportunity. In Count iii, plaintiff sought damages for beach of employment contract. Although all three counts arose out of the same course of conduct by Shields, they each allege different legal claims and the first two sought damages different from the third, i.e., lost profits as opposed to bonuses. The first two counts were not necessarily repugnant to the third and did not require proof of facts which the third denied. Defendants' claim that the doctrine of election of remedies applies to bar recovery by plaintiff under more than one count is without merit.

### CONCLUSION

The grant of summary judgment is affirmed, the

denial of plaintiff's motion for judgment notwithstanding the verdict is reversed, and the case is remanded for further proceedings regarding damages for defendant Shields' breach of his fiduciary duties and usurpation of a corporate opportunity.

Affirmed in part, reversed in part and remanded.