NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0300n.06

No. 13-1952

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 22, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN WOLDING, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| RICHARD CLARK, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

Before: BATCHELDER, Chief Judge; McKEAGUE, Circuit Judge; OLIVER, District Judge*

**OLIVER, District Judge.** Plaintiff-Appellant, John Wolding ("Plaintiff"), appeals the order of the district court granting summary judgment in favor of Defendant-Appellee Richard Clark ("Defendant") on Plaintiff's claim for breach of fiduciary duties and oppression of his rights as a minority shareholder. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

On February 12, 2010, Plaintiff filed this action against Defendant in the United States District Court for the Eastern District of Michigan, asserting the following claims: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; (2) breach of fiduciary

---

* The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

duties and violating his rights as a minority shareholder pursuant to Michigan Complied Laws ("MCL") Section 450.1489; (3) fraud; and (4) injunctive relief requesting an appointment of receiver and accounting. Plaintiff then filed an Amended Complaint on September 28, 2010, asserting the following claims: (1) violation of the FCRA; (2) violation of fiduciary duties and oppression of minority shareholder by controlling shareholder pursuant to MCL 450.1489; (3) fraud; and (4) "injunctive relief against Defendant Clark."

On March 1, 2012, Defendant filed a motion for summary judgment. On June 28, 2012, the district court granted Defendant's motion. First, the district court determined that Plaintiff failed to establish a fraud claim because there was no evidence that Defendant had a bad faith intent to break the alleged promise made to Plaintiff to allow Plaintiff to return to his position following retirement. Second, the district court found that Plaintiff failed to establish a violation of the FCRA because Plaintiff did not present any evidence showing that Defendant or anyone at Defendant's direction obtained Plaintiff's credit report. Third, the district court determined that Plaintiff failed to establish a minority shareholder oppression claim because Plaintiff did not demonstrate any actions by Defendant that interfered with his interests as a shareholder.

On appeal, Plaintiff only challenges the district court's finding with respect to the dismissal of his claim for oppression of a minority shareholder by a controlling shareholder pursuant to MCL § 450.1489. Thus, the only issue is whether the district court's order granting summary judgment in favor of Defendant with respect to Plaintiff's shareholder oppression claim pursuant to MCL § 450.1489 was proper.

**B. Factual Background**

1. Formation of LOOK!

Plaintiff and Defendant are co-founders of LOOK! Insurance ("LOOK!"). LOOK! is an insurance agency formed in 1993 to market and sell Michigan No-Fault insurance to residents

ineligible to purchase insurance from a general carrier. After its formation, LOOK! eventually became a franchise with approximately 70 insurance agencies doing business under the name LOOK! Insurance. LOOK! Insurance Agencies, Inc. ("LIA") is the operational unit of the business. However, the business is also compromised of five other entities: Sheldon Road Corporation ("SRC"), A Cherry Hill Corporation ("ACH"), LOOK! Advertising Fund ("LAF"), LIAC, Inc., and LOOK! Printing, Inc. Each of these entities does business under the name of LOOK! and was formed to sell sub-standard high risk automobile insurance and perform other related functions. Since the formation of LOOK!, Plaintiff and Defendant have been equal shareholders and directors of the entities. Additionally, from the formation of LOOK! until Plaintiff's retirement, Plaintiff and Defendant shared the positions of co-chairman, co-director, co-president, co-treasurer, and co-secretary.

## 2. Plaintiff's Retirement

In 2007, Plaintiff retired from LOOK! as an officer-employee of the corporation; however, he remained an equal shareholder and member of the board of directors. On January 3, 2008, Plaintiff and Defendant entered into an agreement regarding Plaintiff's retirement. The agreement provided:

> A motion was made and seconded to accept the retirement of John A. Wolding from Look Insurance Agencies, Inc and Look No-Fault Insurance Agency Inc. John A. Wolding has retired as of July 01, 2007 and is drawing social security. John A. Wolding has resigned from his position as Co-President. John A. Wolding will remain on the Board of Directors and is still a Shareholder. Richard D. Clark will receive John A. Wolding's salary until Richard D. Clark retires. John A. Wolding and Richard Clark will continue receiving dividends. John A. Wolding and Richard D. Clark accepted.

> A motion was made and accepted that Richard D. Clark will hold the positions of Chairman, President, Director, Treasurer, and Secretary. John A. Wolding and Richard D. Clark accepted.

(Approval of Shareholder Minutes at p. 3, Dist. Ct. Dkt., ECF No. 53-14.)

### 3. Plaintiff's Request for Access to LOOK! Books and Records

After Plaintiff's retirement on July 27, 2009, Plaintiff sent a letter to Defendant requesting, as a shareholder and director, full access to all company records, including newsletters sent to the agents. On August 7, 2009, David B. Walters ("Walters"), general counsel for LOOK! responded to Plaintiff's request, forwarding copies of the balance sheet and income statement for the most recent fiscal year, as well as copies of the board of directors' and shareholders' minutes. Walters also notified Plaintiff that his status as a shareholder or director of LOOK! would not entitle him to copies of the company newsletters. Additionally, Walters asked Plaintiff to refrain from communicating with officers and employees of LOOK!.

On August 7, 2009, S. Thomas Padgett ("Padgett"), counsel for Wolding, replied to the letter from Walters, demanding that books and records for each LOOK! entity be produced for inspection by Wolding on September 8, 2009, and September 9, 2009, at the LOOK! offices in Monroe, Michigan. The books and records requested included: all minutes of director and shareholder meetings for 2008 and 2009; all payroll records for 2008 and 2009, state and federal quarterly and annual tax returns for 2008 and 2009; monthly and annual profit loss statements for each month during 2008 and 2009, and annually for 2008 and 2009; the general ledger for each month and annually for 2008 and 2009; and checkbook registers and bank statements for all accounts for 2008 and 2009.

On August 13, 2009, Walters responded to Padgett's demand for inspection of books and records, providing Wolding with the following: shareholder and director minutes or consents in

lieu of meetings for 2008; audited financial statements for 2008; unaudited balance sheet and income statements for 2008 and 2009; and income tax returns for 2008. On August 26, 2009, Padgett responded to Walters's letter, stating that previously requested books and records were not produced with the August 13, 2009 letter, including: payroll records for 2008 and 2009; state and federal quarterly returns for 2008 and 2009; a general ledger for each month during 2008 and 2009; and checkbook registers and bank statements for all accounts for each month during 2008 and 2009. Additionally, Padgett requested copies of documents relating to LOOK!'s communication with, hiring of, and payment to Walters and Bodman LLP, Walters's law firm.

On September 15, 2009, Walters partially responded to Padgett's August 28, 2009 letter by producing 1,199 pages of checkbook registers and bank statements for all accounts for each LOOK! entity for each month of 2008 and 2009. Additionally, Walters indicated that additional documents would be produced by September 24, 2009. Accordingly, on September 24, 2009, Walters fully responded to Padgett's August 28, 2009 letter, by producing: payroll records for 2008 and 2009; federal and state quarterly employment related tax returns for 2008 and 2009; general ledger for 2008 and 2009; 2009 documents related to correspondence between LOOK! and Bodman LLP, and the retainer agreement between LOOK! and Bodman LLP.

On November 12, 2009, Padgett wrote to Walters, indicating that some previously requested documents were not produced, including bills from Bodman LLP to LOOK! and documents relating to communications between Bodman LLP and Defendant or any other employee of LOOK!. On November 13, 2009, Walters responded to the November 12, 2009 letter, informing Padgett that he had not previously requested invoices from Bodman LLP to LOOK!, but had requested only evidence of payment to Bodman LLP. Walters further responded that LOOK! had complied with the request for evidence of payment to Bodman LLP

by producing all check registers and bank statements that would provide evidence of all payments made by LOOK!. Additionally, Walters notified Padgett that he had previously requested communications between Bodman LLP and Defendant and had not requested memoranda or communications between Bodman LLP and other LOOK! employees. However, Walters stated that he would request that any communications between Bodman LLP and LOOK! employees be produced. Subsequent to each of the before-mentioned communications regarding Plaintiff's request for LOOK! books and records, Plaintiff testified in deposition, "I have been provided with a delayed record of the companies' performance, which would be adequate if given to me in a timely fashion." (Tr. at 12, Jan. 25, 2012, Dist. Ct. Dkt., ECF No. 53-9.)

### 4. Plaintiff's Attempt to Return to Active Employment at LOOK!

On August 26, 2009, Plaintiff notified Defendant of his desire to return to active employment at LOOK!. Plaintiff also gave notification that he was nominating himself to serve as President, Treasurer, Secretary, Chairman, and any other elected position of LOOK!. Additionally, Plaintiff gave notice that he would modify his nomination to serve as Co-President, Co-Treasurer, Co-Secretary, Co-Chairman, and jointly to any other elected position of LOOK!. On November 16, 2009, Plaintiff again wrote Defendant stating his desire to come out of retirement and serve with Defendant as Co-President and Co-Director of LOOK!. On November 18, 2009, Defendant responded to Plaintiff and denied his request to return to active employment at LOOK!.

### 5. Reduction of Shareholder Distributions

On November 18, 2009, Defendant sent a letter to Plaintiff notifying him that it may be necessary to temporarily reduce cash flow distributions from LOOK! due to the downturn of the economy, reduced commission rates, and an unanticipated increase in operating costs. Then, in

2011, LOOK! did not declare its annual year-end special dividend. Defendant testified in deposition that he made the decision not to pay the year-end special dividend in order "to protect the company from going under." (Clark Tr. at 242, Jan. 16, 2012, Dist. Ct. Dkt., ECF No. 60-6.) Additionally, Defendant sent a letter to Plaintiff in December 19, 2011, explaining that for the first three months of 2012, he had decided to lower monthly dividends by $8,000 each and put the dividends in escrow because he was worried about the company.

### 6. Opening of Company Stores

In 2010, LOOK! opened two company-owned stores. Plaintiff was not informed of the plan to open the two stores prior to their opening. The opening was also not authorized by the Board of Directors. Instead, Defendant authorized the opening. Upon authorization by Defendant, $30,000 in start-up expenses were provided by LOOK! Insurance to SRC to open the stores. Additionally, since the opening of the stores, cash from LOOK! has been used to support the stores.

On June 7, 2011, at a special meeting of the Board of Directors of LOOK!, Plaintiff asked why the Company chose to own a store and why franchises were not available for purchase. Henry Beausejour ("Beausejour"), Vice President of Marketing, informed Plaintiff that a competitor had closed a number of locations in the area and the expansion was an opportunity to have a presence in the area, during a time when competition was at a minimum. Beausejour also explained that franchisees were reluctant to invest in the area because there would be a high cost to maintain security. Beausejour also indicated that a short-term reduction in dividends may be necessary for the expansion, but that such a reduction may have been necessary even without the expansion, as competition was increasing in the Michigan market.

### 7. Decision to Cease Sale of Franchises

The parties disagree about whether LOOK! ceased offering franchises for sale in Michigan. LOOK!'s website on March 9, 2011, stated that "Michigan Franchise Sales have ceased. Information coming soon on expansion into other States." Plaintiff interprets this statement to mean that LOOK! ceased offering franchise sales in Michigan. Defendant states that no decision was made for LOOK! not to offer franchises in Michigan. Instead, he stated that in an effort to protect the company, a decision was made not to sell franchises to certain people because there had been bad agents approaching LOOK! with offers to purchase franchises. Additionally, Defendant and Beausejour contend that this announcement was made because a competitor of LOOK!, LA, was attempting to purchase a franchise. Defendant contends that LOOK! is not refusing to sell franchises in Michigan, but instead is only willing to sell to qualified individuals.

### 8. Prepayment of Expenses

In 2012, Defendant decided to increase LOOK!'s prepayment of expenses by approximately $200,000. This resulted in approximately $500,000 of prepaid expenses. These expenses included employee salaries, health insurance, and rent. Catherine Edel, Chief Financial Officer of LOOK!, testified that the increased prepayment of expenses was due to the current litigation between Plaintiff and Defendant.

## II. STANDARD OF REVIEW

An order granting summary judgment is subject to *de novo* review. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). In reviewing summary judgment motions, the district court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine dispute as to any material fact exists. *See Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (internal quotation marks omitted); *see* Fed.R.Civ.P. 56(a), (c). The moving party has the burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Credibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### III. ANALYSIS

Plaintiff argues that the district court erred in granting Defendant's motion for summary judgment because there was substantial evidence that Defendant engaged in conduct that violated Plaintiff's shareholder rights. Plaintiff contends that this evidence includes the following conduct by Defendant: (1) denying Plaintiff access to corporate books and records; (2) preventing Plaintiff from returning to employment at LOOK!; (3) failure to pay the normal year end distribution; (4) opening two company stores against the company's best interest; (5) halting the sale of Michigan franchises; and (6) prepaying expenses.

Defendant argues that MCL § 450.1489, the statute under which Plaintiff brought his claim, protects only Plaintiff's interest as a shareholder rather than as a director or an officer of the corporation, and does not apply to the conduct he has alleged. Defendant also contends that the district court correctly found that Defendant did not interfere with Plaintiff's shareholder

interest through "illegal, fraudulent, or willfully unfair and oppressive" conduct and, therefore, the district court decision should be affirmed.

Section 489 of the Michigan Business Corporations Act, MCL § 450.1489(1), provides that "[a] shareholder may bring an action ... to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." Under the statute, "willfully unfair and oppressive conduct" is defined as:

> a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure.

MCL § 450.1489(3).

Additionally, the statute "only gives rise to a cause of action where a shareholder suffered oppression in his or her capacity as a shareholder." *Arevelo v. Arevalo*, Nos. 285548, 286742, 2010 WL 1330636, at *6 (Mich. Ct. App. Apr. 6, 2010) (citing *Franchino v. Franchino*, 687 N.W.2d 620 (Mich. Ct. App. 2004)) ("[A] shareholder may not sue under the statute for oppression suffered in his capacity as a director or an employee."). The rights of a shareholder typically include "voting at shareholder's meetings, electing directors, adopting bylaws, amending charters, examining the corporate books, and receiving corporate dividends." *Franchino*, 687 N.W.2d at 628.

## A. Denial of Access to Corporate Books and Records

Plaintiff argues that Defendant violated his shareholder rights by denying him access to the corporate books and records. Defendant contends that the district court's holding which granted summary judgment in favor of Defendant on Plaintiff's corporate records claim should be upheld because Plaintiff fails to show that he did not receive access to all records to which he was entitled prior to filing of the lawsuit. Defendant further contends that Plaintiff's request for records was overbroad and did not comply with the requirements of MCL § 450.1487.

Section 487 of the Michigan Business Corporation Act, MCL § 450.1487(2), gives shareholders the right to examine corporate books and records. The statute provides that:

> Any shareholder of record, in person or by attorney or other agent, shall have the right during the usual hours of business to inspect for any proper purpose the corporation's stock ledger, a list of its shareholders, and its other books and records, if the shareholder gives the corporation written demand describing with reasonable particularity his or her purpose and the records he or she desires to inspect, and the records sought are directly connected with the purpose. A proper purpose shall mean a purpose reasonably related to such person's interest as a shareholder. The demand shall be delivered to the corporation at its registered office in this state or at its principal place of business. In every instance where an attorney or other agent shall be the person who seeks to inspect, the demand shall be accompanied by a power of attorney or other writing which authorizes the attorney or other agent to act on behalf of the shareholder.

MCL § 450.1487(2).

We agree with Defendant that the district court correctly granted summary judgment in favor of Defendant because Plaintiff does not argue that there are any remaining books or records to which he has been denied access. Additionally, we agree that Plaintiff's initial request for access to books and records was overbroad and did not comply with MCL § 450.1487. Plaintiff sent his initial request for documents to Defendant on July 27, 2009, requesting full

access to all company records, including newsletters sent to the agents. Plaintiff stated that the purpose of his request was that he "may again become and stay informed." (E-Mail Ex. 65, Dist. Ct. Dkt., ECF No. 60-3.) The court finds that this request was overbroad, as Plaintiff did not narrow his request to any specific books and records of the company. (*Id*.) Instead, he requested "full access to all company records." (*Id*.) Despite this overbroad request, the court finds that Defendant, on August 7, 2009, sent Plaintiff copies of the balance sheet and income statement for the most recent fiscal year, as well as copies of board and shareholder minutes. Furthermore, the court finds that once Plaintiff limited his request to specific books and records of the company, Defendant continued to supply Plaintiff with additional books and records of the company, resulting in Plaintiff gaining access to all requested documents.

Plaintiff does not contend that he has not been given access to all of the books and records he requested. Instead, he simply argues that he was "provided with a delayed record of the companies' performance, which would be adequate if given to [him] in a timely fashion." Therefore, because Plaintiff agrees that he was eventually provided with all the books and records he requested, there is not a genuine dispute of material fact regarding whether Plaintiff was denied access to the company books and records. *See Nagia v. Chota*, No. 229311, 2002 WL 1308335, at *3 (Mich. Ct. App. June 14, 2002) (holding that plaintiffs failed to meet their burden of establishing a factual dispute to prevent summary judgment where defendants provided plaintiffs with documents since the initiation of the suit and plaintiffs failed to identify any documents to which they were entitled that defendants failed to produce).

### B. Preventing Plaintiff from Returning to Employment at LOOK!

Plaintiff argues that Defendant violated his shareholder rights by preventing him from returning to employment at LOOK! Plaintiff argues that preventing him from returning to employment is equivalent to removing a minority shareholder from a position in management.

Defendant contends that the district court correctly held that Defendant did not violate Plaintiff's shareholder rights by declining to re-employ him after retirement because shareholders do not have a right to employment.

Shareholders do not have a right to employment with the company. *Franchino*, 687 N.W.2d at 628. However, MCL § 450.1489(3) does allow a minority shareholder to assert a claim for willfully unfair and oppressive conduct, including "termination of employment or limitations on employment benefits to the extent the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder." MCL § 450.1489(3); *see also Berger v. Katz*, Nos. 291663, 293880, 2011 WL 3209217, at *5 (Mich. Ct. App. July 28, 2011) ("MCL 450.1489(3) now allows a minority shareholder to claim willfully unfair and oppressive conduct as a result of reductions in salary or other employment benefits.").

Plaintiff does not allege that his employment with LOOK! was terminated or that he incurred a reduction in his salary or employee benefits. Also, there is no dispute that Plaintiff voluntarily retired from employment at LOOK!. The record indicates that Plaintiff and Defendant entered into an agreement on January 3, 2008, which stated that Plaintiff retired as of July 1, 2007, resigned from his position as Co-President, and that Defendant would receive Plaintiff's salary until Defendant's retirement. Furthermore, Plaintiff does not allege that he was forced to assent to this agreement, fired, or forced out of the company. Furthermore, the term "willfully unfair and oppressive conduct" specifically excludes "conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure." MCL § 450.1489(3). Therefore, Plaintiff cannot now claim that Defendant's conduct was "willfully unfair and oppressive" when Plaintiff voluntarily retired from LOOK! pursuant to a valid agreement. *See Langrill v. Diversified Fabricators, Inc.*,

Nos. 225001, 225002, 2002 WL 1375902, at *1 (Mich. Ct. App. June 25, 2002) (finding that plaintiff's consent to a stock transfer agreement disposes of his oppression claims under MCL § 450.1489). Additionally, because shareholders' rights do not include a right to employment with the company, and Plaintiff does not have a right to re-employment with the company under any agreement, the court finds that it was not willfully unfair and oppressive for Defendant to refuse to rehire Plaintiff. Consequently, the court finds that there is no genuine dispute of material fact regarding whether it was willfully unfair and oppressive for Defendant to refuse to rehire Plaintiff.

## C. Failure to Declare Dividends

Plaintiff argues that Defendant diverted $500,000 in cash to prepay expenses instead of paying the normal year-end distribution. Plaintiff also argues that Defendant has eliminated dividend distributions and lowered dividends for the first three months of 2012 without consulting his fellow board members, citing business conditions as the reason. Plaintiff further contends that Defendant's cited reason for lowering dividends was a pretext. Plaintiff contends that the reason that less cash was available has nothing to do with a downturn in business; instead, it is because Defendant diverted cash to prepay 2012 expenses. Defendant argues that even if the prepayment of expenses reduced the distributions, "LOOK! had no duty to maximize short-term distributions at the expense of other business interests." Defendant also argues that, as a shareholder, Plaintiff had a right to his proportional share of distributions, and it is undisputed that Defendant also did not receive a year-end distribution.

A shareholder may not sue under Section 489 of the Michigan Business Corporations Act for oppression suffered in his capacity as a director of the company. *Arevelo*, 2010 WL 1330636, at *6. Additionally, exclusion from corporate governance is not recognized as minority oppression under this statute. *Hofmesiter Family Trust v. FGH Indus., LLC*, No. 06-cv-

13984-DT, 2007 WL 1106144, at * 5 (E.D. Mich. Apr. 12, 2007). Therefore, there is no cause of action under § 489 allowing Plaintiff to contest Defendant's unilateral decision to eliminate the 2011 year-end dividend and reduce monthly dividends for the first three months of 2012.

However, shareholders' rights include receiving corporate dividends. *Franchino*, 687 N.W.2d at 628. Thus, Plaintiff may state a claim under § 489 for violation of his right to receive dividends. Refusal to declare dividends can be considered willfully unfair and oppressive conduct under § 450.1489. *Bromley v. Bromley,* No. 05-71798, 2006 WL 2861875, at *5 (E.D. Mich. Oct. 4, 2006). However, in the absence of bad faith or fraud, courts will not interfere with the discretion of the directors in deciding whether to declare a dividend. *Matter of Estate of Butterfield,* 341 N.W.2d 453, 458 (Mich. 1983). (Courts will not interfere with the decision of management not to declare a dividend "unless it is clearly made to appear that [the directors] are guilty of fraud or misappropriation of the corporate funds, or refuse to declare dividends when the corporation has a surplus of net profits which it can without detriment to its business, divide among its stockholders, and when a refusal to do so would amount to such an abuse of discretion as would constitute fraud, or breach of that good faith which [directors] are bound to exercise toward shareholders."). Thus, a court will only interfere with the director's decision whether to declare dividends if the refusal to declare dividends amounts to a breach of its fiduciary duty. *Id*. at 458-59.

We do not find that Defendant breached a fiduciary duty by refusing to declare the 2011 year-end distributions or by reducing the monthly distributions for the first three months of 2012. Plaintiff fails to demonstrate any fraud or bad faith with respect to Defendant's conduct. The record indicates that on November 18, 2009, Defendant sent a letter to Plaintiff notifying him that it may be necessary to temporarily reduce cash flow distributions from LOOK! due to the

downturn of the economy, reduced commission rates, and an unanticipated increase in operating costs. Then, in 2011, Defendant maintains he decided not to make the annual year-end special dividend to protect the company from going under. Defendant also asserts he reduced monthly dividends for the first three months of 2012 by $8,000 each, and put the dividends in escrow because he was worried about the company. Plaintiff offers no evidence to contest the fact that Defendant made these decisions to reduce or eliminate dividends to protect the company. Instead, Plaintiff argues that Defendant's cited reasons are only a pretext and that Defendant only made it appear that less cash was available by prepaying $500,000 in expenses in 2012 and opening two new company stores that were unprofitable.

Assuming that Plaintiff is correct and Defendant eliminated and reduced dividends in order to prepay expenses and to cover the expenses of opening two unprofitable company stores, he has not shown that these decisions were fraudulent or made in bad faith. Furthermore, Plaintiff has not shown a surplus of net profits that Defendant could have distributed to shareholders without detriment to the business, or that the failure to do so constituted fraud or a breach of good faith. *See id.* at 458. (Plaintiff must show a surplus of dividends and that refusal to declare a dividend amounts to fraud or a breach of good faith for a court to interfere with the discretion of the directors of the corporation not to declare a dividend.) Nor has Plaintiff shown that the failure to declare dividends affected him disproportionately as a minority shareholder. Therefore, we find that there is no genuine dispute of material fact regarding whether it was willfully unfair and oppressive for Defendant to refuse to declare the year-end dividend and reduce monthly dividends.

### D. Prepaying Expenses

Plaintiff argues that Defendant engaged in oppressive conduct violating shareholder rights by diverting $500,000 to prepay expenses when the amount of prepaid expenses in prior

years was $300,000[1]. Plaintiff argues that this diversion deprived him of his share of dividends, which would have been at least $173,000. Plaintiff further argues that prepaying these expenses was fraudulent, and that the purpose was to prevent him from realizing the value of his investment in the company. Defendant contends that the expenses were legitimate business expenses owed to third parties and that prepayment became an asset of the company. Defendant also contends that due to business challenges that arose at the end of 2011, he decided to prepay $200,000 in expenses to guard against additional anticipated business challenges. Additionally, Defendant argues that Plaintiff agrees that the goal of LOOK! at year-end is to "zero out" accounts to avoid taxes and that prepaying expenses accomplishes this goal. Defendant further argues that even if the pre-paid expenses reduced distributions for the year, "LOOK! had no duty to maximize short-term distributions at the expense of other business interests."

The court does not find that Defendant's diversion of $500,000 to prepay expenses in 2012 instead of paying a year-end distribution was oppressive to Plaintiff. Plaintiff has an interest in receiving dividends of the corporation. However, for Defendant's conduct to be actionable under § 489, it must be "illegal, fraudulent, or willfully unfair and oppressive." Plaintiff must demonstrate "a continuing course of conduct or a significant action or series of actions that substantially interfered with his interests as a shareholder." *Forsberg v. Forsberg Flowers, Inc.*, No. 253762, 2006 WL 3500897, at *7 (Mich. Ct. App. Dec. 5, 2006) (citing MCL § 450.1489(3)). Michigan courts have held that when addressing shareholder oppression claims, "the focus is on the majority's conduct, rather than the minority's expectations." *Bromley*, 2006 WL 2861875, at *5 (citing *Franchino*, 687 N.W.2d at 630.).

---

[1] Plaintiff incorrectly states in his brief that the normal prepaid expenses were $30,000 annually, however, the deposition testimony of Edel indicates that the normal amount of annual prepaid expenses for LOOK! was $300,000. (Edel Tr. at 116, Jan. 18, 2012, Dist. Ct. Dkt., ECF No. 60-7.)

Plaintiff argues that it was fraudulent for Defendant to divert company funds to prepay expenses and that Defendant prepaid these expenses in order to prevent him from realizing his investment in the corporation. However, Plaintiff has presented no evidence that Defendant's conduct of prepaying expenses was fraudulent or willfully unfair and oppressive. The only evidence Plaintiff points to in support of his contention is Catherine Edel's testimony that the company prepaid expenses "to protect the company because of this litigation and not knowing which way things were going to happen." (Edel Tr. at 114, Jan. 18, 2012, Dist. Ct. Dkt., ECF No. 60-7.) Plaintiff does not contend that the expenses which Defendant prepaid were not legitimate expenses of the corporation. Thus, we do not find that Defendant's conduct was fraudulent.

Furthermore, Plaintiff does not demonstrate that Defendant's conduct substantially interfered with his interests as a shareholder. As a shareholder, Plaintiff does not have a right to direct how company funds are utilized or how company expenses are paid. While Plaintiff does have a right to dividend distribution under appropriate circumstances, he has not demonstrated that prepaying legitimate company expenses interfered with that right. Additionally, assuming prepaying the expenses did interfere with Plaintiff's right to receive a dividend, he has not demonstrated that Defendant's decision to prepay expenses rather than pay a distribution was fraudulent or made in bad faith. *See Matter of Estate of Butterfield,* 341 N.W.2d at 458 (absent bad faith or fraud, courts will not interfere with the discretion of the directors in deciding whether to declare a dividend). Nor has Plaintiff shown that prepayment of expenses disproportionately affected him as a minority shareholder. Thus, we do not find that Defendant's conduct was willfully unfair or oppressive to Plaintiff's rights as a shareholder. Consequently,

the court finds that there is no genuine dispute of material fact regarding whether it was willfully unfair and oppressive for Defendant to increase the amount of prepaid expenses in 2012.

### E. Opening Company Stores

Plaintiff argues that Defendant engaged in conduct that violated his shareholder rights by opening two company stores that are investments which are not in the corporation's best interest. Plaintiff further argues that Defendant diverted company funds from SRC to cover the expenses associated with building and opening the two company stores. Defendant contends that the decision to build two company stores was a strategic business opportunity. Defendant also contends that corporate governance is not a shareholder right and is therefore not actionable under § 489 of the Michigan Business Corporations Act. Additionally, Defendant argues that Plaintiff offers no evidence that opening the two stores impacted distributions. Defendant further argues that even if opening the two stores impacted distributions, § 489 of the Michigan Business Corporations Act "does not require management to pursue short term maximization of shareholder distributions in lieu of all other corporate objectives" or empowers shareholders to second guess management's business decisions.

A shareholder may not sue under § 489 of the Michigan Business Corporations Act for oppression suffered in his capacity as a director of the company. *Arevelo*, 2010 WL 1330636, at *6. Additionally, exclusion from corporate governance is not recognized as minority oppression under this statute. *Hofmesiter Family Trust,* 2007 WL 1106144, at * 5. Therefore, Plaintiff has no cause of action under § 489 to contest the decision to build two company stores simply because he did not participate in this decision and believes it was not in the best interest of the corporation.

Furthermore, we reject Plaintiff's claim that the opening of the company stores affected his interests as a shareholder because Defendant diverted company funds, making less cash

available for the year-end distribution. Plaintiff does have an interest in receiving dividends of the corporation. However, for Defendant's conduct to be actionable under § 489, it must be "illegal, fraudulent, or willfully unfair and oppressive," and Plaintiff must demonstrate "a continuing course of conduct or a significant action or series of actions that substantially interfered with his interests as a shareholder." *Forsberg*, 2006 WL 3500897, at \*7 (citing MCL § 450.1489(3)).

The record indicates that the two company stores were opened because a competitor closed a number of locations in the area, and the expansion was an opportunity to have a presence in the area during a time when competition was at a minimum. Additionally, the record indicates that the stores were opened by the company instead of by franchisees because franchisees were reluctant to invest in the area due to the high costs to maintain security in the area. Plaintiff does not dispute that these were the reasons the company stores were opened. Additionally, Plaintiff does not demonstrate how opening the two company stores impacted his year-end distributions or interfered with his rights as a minority shareholder. Accordingly, there is no genuine dispute of material fact regarding whether it was willfully unfair and oppressive for Defendant to open two company stores.

## F. Halting the Sale of Michigan Franchises

Plaintiff argues that Defendant's conduct in halting the sale of Michigan franchises violated his rights as a shareholder because it constitutes diverting or interfering with corporate opportunities. Plaintiff did not make this argument to the district court. Therefore, it has been waived. However, even if the argument was not waived, it is still not well-taken. The record indicates that Defendant testified in deposition that no decision had been made by LOOK! to stop offering franchises in Michigan. Instead, he stated that a decision was made not to sell franchises to certain people in an effort to protect the company because there had been bad

agents approaching LOOK! with offers to purchase franchises. Additionally, the record indicates that the website announcement regarding LOOK! ceasing to sell franchises in Michigan was made because a competitor of LOOK!, LA, was attempting to purchase a franchise.

Again, § 489 does not allow Plaintiff to sue for conduct oppressive to him in his capacity as a director of the company. *Arevelo*, 2010 WL 1330636, at *6. Also, exclusion from corporate governance is not recognized as minority oppression under § 489. *Hofmesiter Family Trust,* 2007 WL 1106144, at *5. Therefore, Plaintiff has no cause of action under § 489 to contest the alleged decision to cease selling Michigan franchises simply because he did not participate in this decision and believes it was not in the best interest of the corporation. Additionally, while it is true that a director has a fiduciary duty not to divert a business opportunity of the corporation for his own personal gain, there is no evidence, and Plaintiff does not contend, that Defendant diverted a business opportunity for his own personal gain. *See Prod. Finishing Corp. v. Shields*, 405 N.W.2d 171, 174 (Mich. Ct. App. 1987). Thus, we find that Defendant did not violate Plaintiff's shareholder rights by diverting a corporate opportunity for his own gain. Accordingly, there is no genuine dispute of material fact regarding whether it was willfully unfair and oppressive for Defendant to cease selling franchises in Michigan. In reaching this conclusion, we do not opine on whether the decisions made by the Defendant were the very best or whether if they were repeated over time, they would constitute a violation of Plaintiff's rights. However, for the reasons indicated above, summary judgment is appropriate.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's granting of summary judgment in favor of Defendant.